**UNITED STATES v. GRUBER.**

**No. 86.**

Circuit Court of Appeals, Second Circuit.

Nov. 10, 1941.

See, also, 39 F.Supp. 291.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

Jacob Gruber, of New York City, in person (I. Maurice Wormser and Frank X. Cronan, both of New York City, of counsel), for appellant.

Mathias F. Correa, U. S. Atty., of New York City (John L. Burling, Asst. U. S.

Atty., of New York City, of counsel), for the United States of America, appellee.

AUGUSTUS N. HAND, Circuit Judge.

The appellant, Gruber, was indicted by a jury for conspiring to defraud the United States of the disinterested services of Elizabeth Miller, a telephone operator in the New York Regional Office of the Securities and Exchange Commission and also for the substantive offenses of aiding and abetting her in intercepting and divulging a telephone communication of March 3, 1941, and another one on March 26, 1941.

■ It is unnecessary to say more about the merits of the case than that the evidence adduced on the part of the government was ample to justify the charge that Gruber induced Miss Miller to connect his office telephone by means of what is known as the conference system with calls from one Earl Edden, an employee of S. E. C. in Chicago, who was calling the latter's superior Byrne at the New York office. Edden was engaged on behalf of the S. E. C. in an investigation of the so-called "Esquire-Coronet" matter involving a client of Gruber. Gruber desired to know what steps were being taken against his client and sought to acquire the information by means of the conference system put into operation by Miss Miller. She testified that on March 3, 1941, and March 26, 1941, she did not overhear either conversation but connected Gruber's office with the Chicago calls and told him "to keep quiet". While Gruber denied the entire story there was substantial evidence to support the verdict that he conspired with Miss Miller and aided and abetted her in violating the "wire tapping" sections of the Communications Act. The clause of that Act to which attention is particularly directed is the second clause of Section 605, Title 47 of the United States Code Annotated, which reads as follows: "and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."

■■ The purely verbal argument is made that though Miss Miller intercepted the telephone messages between Edden and Byrne by shunting them to Gruber, she could not have divulged them because she never heard the conversations. The contention seems little less than fantastic. Our decision in United States v. Polakoff, 112 F.2d 888, 134 A.L.R. 607, is oddly enough relied on by the appellant as showing that Miss Miller neither intercepted nor divulged any communication. But that decision was essentially to the contrary. There the telephone messages were carried over an ordinary extension telephone and received upon a recording instrument set up by government agents. The recording was the interception, and the transmission of the record by playing it back to the agents constituted the act of divulging. A hearer not contemplated by the parties to the conversation was introduced without their consent. It can make no difference that the person divulging did not know the contents of the message. Whether he was never engaged in listening or could not understand the communication, so long as he caused it to be transmitted to a third party without the consent of the sender, he intercepted and divulged the communication and violated the statute as surely as though he had abstracted a telegram from a Western Union Office and delivered it to some third party. In the present case the evidence of guilt was plain. The only matters for further consideration are the objections of the appellant to the conduct of the trial.

■■ Particular objection is made to the cross examination by the government of some of the appellant's character witnesses. One of them, Charles S. Colden, the County Judge of Queens County, New York, testified that Gruber had an excellent reputation for truth and veracity. Judge Colden had given answers which indicated that he had in a general way followed the work of the appellant while a Deputy Assistant Attorney General of the State. He was, however, asked on cross examination whether Paul McCauley, an Assistant Attorney General of the State had reported to the Chief of the Securities Division that he had information that Gruber had received a bribe as a Deputy Assistant Attorney General. While Colden denied that he had heard the rumor, there would, under some circumstances, be prejudice in suggesting reports of the commission of crimes not within the scope of the indictment. But, whether or not the question was permissible, it cannot be regarded as damaging, in view of the fact that Gruber took the stand himself and was exam-

ined fully about the alleged bribery and explained that the charge against him was withdrawn by a litigant who had made the complaint and that the matter was closed to the satisfaction of the Attorney General of the State. Objections are made to similar questions to the character witnesses Pette, Fitzgerald and Brunner, who answered that they had not heard of the report that the appellant had been charged with receiving a bribe. There is no claim that the government's counsel did not ask the questions in good faith and the error, if any, was cured by appellant's own testimony. Moreover, the trial judge instructed the jury that the cross examination was permitted only to test "the opinion of the witnesses". He said in substance that he did not allow it as proving the fact of other misconduct and added: "So do not get it into your minds that it is a fact. It is only as to whether or not the opinion expressed would be changed by that."

■ It seems unnecessary to discuss appellant's objections to the latitude allowed the government in the cross examination of the appellant himself, particularly as to irregularities in his income tax returns and as to acts of graft and bribery. He had offered himself as a witness and testified how excellent had been his career in the Attorney General's Office and with the S. E. C. and had called witnesses to show his good character. It was permissible under such circumstances to cross examine him about derelictions even in collateral matters. The object was to attack his credibility and, after carefully reading his testimony, we have discovered nothing in connection with the cross examination calling for special comment. It was mainly directed toward developing the nature of his professional conduct and attempting to show its vulnerability and cannot be thought to have exceeded the ordinary bounds of cross examination. United States v. Manton, 2 Cir., 107 F.2d 834, 845; Tinkoff v. United States, 7 Cir., 86 F.2d 868, 878. Cf. Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624.

■ The objections to the rulings of the trial judge in declining to admit letters of the New York Attorney General and McCauley, and of the chairman and counsel for S. E. C. commendatory of Gruber's work in the Attorney General's Office and with S. E. C. are without merit. At best they were hearsay evidence of the opinions of persons who were not called as witnesses and their admission would have deprived the government of its right of cross examination. Moreover, the character witnesses who were called testified that Bennett and McCauley had not told them anything that was unfavorable to the appellant. Consequently, under all rules of procedure, the letters were not only incompetent but had no value on any issue before the court.

■ The appellant also insists that he was prejudiced by testimony of Edden and Meehan regarding the telephone conversation between Edden and Byrne on March 26. Edden did testify that Byrne told him that Chester Lane, then counsel for S. E. C., was very much concerned about the activities of Gruber in connection with certain witnesses appearing before the grand jury in Chicago and that Lane intended to do something about it because he did not think it was right. Meehan, who formerly had been an officer of the S. E. C., testified that he was called on by Gruber on March 26 and that the latter "behaved in a serious manner." Meehan also said that he met Gruber on March 27 and March 28 and was asked by him "if I thought there was any chance of a lawyer becoming involved if he coached a witness who was also his client before his examination before the authorities." The testimony of Edden is criticized as hearsay, and that of both Edden and Meehan as tending to show alleged improper conduct with which Gruber had not been charged. Gruber, however, denied that he heard any telephone conversation between Edden and Byrne on March 26 and indeed offered proof of an alibi. The testimony of Edden was admitted to show not that Chester Lane was "concerned about the activities of Gruber" but that a conversation between Edden and Byrne to that effect was speedily followed by Gruber's interviews with Meehan. Such a sequence of events tended to show that Gruber heard and was disturbed by conversations which Miss Miller testified had been made accessible to him by means of the "conference system" which she had put into operation at his request.

Judgment affirmed.