Linda SIMONS, Plaintiff,

v.

Frank D. O'CONNOR, District Attorney of Queens County; Stephen P. Kennedy, Police Commissioner of the City of New York; New York Telephone Company; and George Kraner, Defendants.

United States District Court
S. D. New York.
Oct. 10, 1960.

John D. Graves, New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen., Philip Kahaner, Asst. Atty. Gen., of counsel, for defendants.

BICKS, District Judge.

Linda Simons, the plaintiff, brings this suit against the District Attorney of Queens County, New York, and others, to recover damages for alleged deprivation of rights secured to her by the laws of the United States. The District Attorney has moved to dismiss the complaint for failure to state a claim upon which relief may be granted.

The well pleaded allegations of fact contained in the complaint, the truth of which are deemed admitted for the purpose of this motion, are that a Grand Jury for the County of Queens returned an indictment against the plaintiff charging her with violating Section 1423 of the Penal Law of the State of New York, McKinney's Consol.Laws, c. 40,[1] which makes it a crime to use a telephone for the purpose of "jamming" the lines of another with the intent to interfere with his business, and that in procuring said indictment the moving defendant divulged to the Grand Jury evidence obtained as a result of tapping her telephone. Albeit the allegations that the moving defendant acted in bad faith, it is clear from the complaint that plaintiff's telephone was tapped only after an order authorizing such wiretap was obtained from the County Court of Queens County consistent with Article 1, Section 12 of the New York State Constitution and § 813–a of the New York Code of Criminal Procedure.[2]

---

1. Section 1423, subd. 6:

"A person who wilfully or maliciously displaces, removes, injures, or destroys:

   \*     \*     \*     \*     \*

"6. A line of telegraph or telephone, wire or cable, \* \* \* or who shall use any such telephone line to make calls to a place of business for the purpose of keeping busy the telephone line or lines thereto in an effort to injure such business by preventing, obstructing or delaying bona fide business calls; \* \* \*."

2. The Constitution and statutes of the State of New York provide that an ex parte order authorizing a wiretap may be issued by judges of a certain rank upon the oath or affirmation of certain officials that there is reasonable ground to believe that evidence of crime may be thus obtained and which identifies the particular telephone number involved and describes the person whose communications or conversations are to be overheard or recorded and the purpose thereof.

The critical issue is whether 42 U.S. C.A. § 1983 [3] creates a private right of pecuniary reparations in favor of a non-assenting sender of a telephonic communication against a state quasi-judicial officer for intercepting and divulging such communication in the discharge of his official responsibilities in accordance with applicable state law.

To the extent that plaintiff's claim is predicated upon alleged bad faith or malice, it is insufficient to support a recovery. In Morgan v. Sylvester, 2 Cir., 1955, 220 F.2d 758, dismissal of a complaint brought under 42 U.S.C.A. §§ 1983, 1985, against state judicial, quasi-judicial, and legislative officers, alleging that they maliciously and corruptly conspired to deprive plaintiff of her constitutional rights was affirmed by the Court of Appeals "on authority of Gregoire v. Biddle, 2 Cir., 177 F.2d 579 and Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019".

Gregoire v. Biddle, supra, was a suit against two successive Attorneys General, two successive directors of the Enemy Alien Control Unit of the Department of Justice, and the District Director of Immigration to recover damages flowing from an alleged malicious and wilful scheme on the part of the defendants to deprive the plaintiff of his liberty contrary to law. The Court of Appeals for the Second Circuit, in affirming the judgment dismissing the complaint for insufficiency, referred to its earlier opinion in Yaselli v. Goff, 2 Cir., 1926, 12 F.2d 396, 56 A.L.R. 1239, stating:

> "We discussed at length the absolute privilege of judges, and held that a United States attorney 'if not a judicial officer, is at least a quasi-judicial officer, of the government,' and that as such the defendant 'in the performance of the duties imposed upon him by law, is immune from a civil action for malicious prosecution. * * * The immunity is absolute and is grounded on principles of public policy. The public interest requires that persons occupying such important positions and so closely identified with the judicial departments of the Government should speak and act freely and fearlessly in the discharge of their important official functions'." Gregoire v. Biddle, supra, 177 F.2d at page 580.

Plaintiff's claim based upon an alleged violation of § 605 of the Federal Communications Act is likewise without merit. Section 605 interdicts the interception and divulgence of telephone communications without the consent of the sender, and section 501 of the Act makes it a misdemeanor to engage in such proscribed conduct. That section 605 creates a civil action for damages in favor of one whose line is tapped against the interceptor if he be a private person cannot be gainsaid. Reitmeister v. Reitmeister, 2 Cir., 1947, 162 F.2d 691. Counsel has not called the Court's attention to any case nor has its independent research unearthed one which extends the Reitmeister doctrine to a quasi-judicial officer.

In the circumstances of this case the immunity doctrine enunciated in Gregoire v. Biddle, supra, is significantly apposite. Sworn to uphold the Constitutions of the United States and of the State of New York and charged with the responsibility of prosecuting crimes committed within his jurisdiction, the District Attorney has before him the holding of the Supreme Court that the state policy of admitting wiretap evidence having probative force, even though obtained illegally, does not contravene federal law, Schwartz v. State of Texas, 1952, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231; the decision of the Court of Appeals of the State of New York that under New York state policy, wiretap evidence though illegally obtained may properly support a judgment of conviction, People v. Variano, 1959, 5 N.Y.2d 391, 185 N.Y.S.2d 1, 157 N.E.2d

---

3. This section derives from one of the statutes, passed in 1871, aimed at enforcing the Fourteenth Amendment, Act of April 20, 1871, c. 22, § 1, 17 Stat. 13.

857; and the decision of the Supreme Court that by enacting § 605 Congress did not intend to thwart a state rule of evidence, Benanti v. United States, 1957, 355 U.S. 96, 101, 78 S.Ct. 155, 2 L.Ed.2d 126.

Unless the immunity doctrine is held to apply to the District Attorney he is placed in a situation where discharge of his public duty may conflict with his private interest, an intolerable one to which no public official should be subjected. On the one hand he has the determinations of the Supreme Court and of the highest court of his own state, and on the other hand, the possible exposure to personal liability without the right to reimbursement[4] from the public treasury. Thus circumstanced, a strain is placed which might introduce into the decisional process considerations of private loss, as inconsistent with the public interest as considerations of private gain. The anomolous situation which brings within the orbit of § 605 divulgence of telephonic communications which the New York Court of Appeals and the Supreme Court have held to be admissible in evidence in the state courts, propels the District Attorney into the very position which brings the immunity doctrine into play. To submit a quasi-judicial official, the innocent as well as the guilty one, "to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." Gregoire v. Biddle, supra, 177 F.2d at page 581. That legislators and quasi-judicial officers, in the discharge of their official functions, are immune to civil liability under 42 U.S. C.A. § 1983, is well established. "The [immunity] privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader * * *." See, Tenney v. Brandhove, supra, 341 U.S. at page 377, 71 S. Ct. at page 788; Francis v. Crafts, 1 Cir., 1953, 203 F.2d 809; Morgan v.

Sylvester, supra; Cawley v. Warren, 7 Cir., 1954, 216 F.2d 74; Tate v. Arnold, 8 Cir., 1955, 223 F.2d 782; Kenney v. Fox, 6 Cir., 1956, 232 F.2d 288; Thompson v. Heither, 6 Cir., 1956, 235 F.2d 176; but cf. Picking v. Pennsylvania R. R. Co., 3 Cir., 1945, 151 F.2d 240.

The answer to the critical question on this motion must be found in the balance between the evils inevitable in either alternative. In the context of this case the balance preponderates in favor of holding the District Attorney immune to the claim asserted by plaintiff. The District Attorney's dilemma should be resolved not by subjecting him to civil liability but by relieving him from the consequences which might flow if he permitted his self interest to interfere with the diligent discharge of the important responsibilities which inhere in his high office.

Motion granted. So ordered.

---

4. Harper & James, Law of Torts, Para. 29.9 p. 1636.