## LEE ET AL. *v.* FLORIDA.

No. 174. Argued May 2, 1968.—Decided June 17, 1968.

*Edward R. Kirkland* argued the cause and filed a brief for petitioners.

*Wallace E. Allbritton,* Assistant Attorney General of Florida, argued the cause for respondent. With him on the brief was *Earl Faircloth,* Attorney General.

MR. JUSTICE STEWART delivered the opinion of the Court.

The three petitioners were convicted in a Florida trial court for violating the state lottery laws. Their con-

victions were affirmed by a Florida district court of appeal,[1] and the Supreme Court of Florida denied further review. We granted certiorari to consider the application of § 605 of the Federal Communications Act of 1934, 48 Stat. 1103, 47 U. S. C. § 605, to the circumstances of this case.[2] That statute provides:

> "[N]o person not being authorized by the sender shall intercept any communication and divulge . . . the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person . . . ."

In the summer of 1963 petitioner Lee ordered the installation of a private telephone in the house where he lived near Orlando, Florida. The local telephone company informed him that no private lines were available, and he was given a telephone on a four-party line instead. A week later, at the direction of the Orlando police department, the company connected a telephone in a neighboring house to the same party line.[3] The police attached to this telephone an automatic actuator, a tape recorder, and a set of earphones. The equipment was connected directly to the wall outlet in such a way that the police could hear and record all conversations on the party line without the necessity of lifting the receiver on their telephone. This arrangement not only afforded the police continuous access to all of Lee's outgoing and incoming calls, but also eliminated the telltale "click" that would otherwise have warned conversing parties that someone else on the line had picked up a receiver.

---

[1] *Lee* v. *State,* 191 So. 2d 84.

[2] 389 U. S. 1033. Issues under the Fourth and Fourteenth Amendments were also presented in the petition for certiorari. We do not reach those issues.

[3] The record does not show how or why this house was made available to the Orlando police.

Further, the arrangement insured that noises in the house occupied by the police would not be heard by anyone else on the line. For more than a week the police used this equipment to overhear and record telephone calls to and from Lee's residence, including calls made to Lee by the other two petitioners from private as well as public telephones.

At the petitioners' trial, several of these recordings were introduced in evidence by the prosecution over objection by defense counsel. In affirming the convictions, the state appellate court said that "there were no state or federal statutes applicable in Florida which would make wiretapping illegal and inadmissible in evidence . . . ." [4]

We disagree. There clearly *is* a federal statute, applicable in Florida and every other State, that made illegal the conduct of the Orlando authorities in this case. And that statute, we hold today, also made the recordings of the petitioners' telephone conversations inadmissible as evidence in the Florida court.

## I.

Section 605 of the Federal Communications Act speaks, not in terms of tapping a wire, but in terms of intercepting and divulging a communication. The State concedes that the police "divulged" the petitioners' conversations within the meaning of the statute. But, it argues, the police cannot be deemed to have "intercepted" the

---

[4] 191 So. 2d, at 85. The court went on to say that "wiretapping is illegal in Florida" by reason of the Florida Constitution. However, the court found that what the police did in this case did not amount to "wiretapping" within the scope of the state constitutional prohibition. The court based its conclusions upon several previous Florida cases: *Perez* v. *State,* 81 So. 2d 201; *Williams* v. *State,* 109 So. 2d 379; *Griffith* v. *State,* 111 So. 2d 282; *Barber* v. *State,* 172 So. 2d 857.

telephone conversations, because people who use party lines should realize that their conversations might be overheard.

This is not a case, however, where the police merely picked up the receiver on an ordinary party line, and we need not decide whether § 605 would be applicable in those circumstances.[5] For here the police did much more. They deliberately arranged to have a telephone connected to Lee's line without his knowledge, and they altered that connection in such a way as to permit continuous surreptitious surveillance and recording of all conversations on the line. What was done here was a far cry from the police activity in *Rathbun* v. *United States,* 355 U. S. 107, a case heavily relied upon by the respondent. There we found no interception where "a communication [is] overheard on a regularly used telephone extension with the consent of one party to the conversation," *ibid.,* and where the "extension had not been installed there just for this purpose but was a regular connection, previously placed and normally used." *Id.,* at 108. We viewed that situation as though one of the parties to the telephone conversation had simply "held out his handset so that another could hear out of it." *Id.,* at 110–111. In the present case, by contrast, there was neither "the consent of one party" nor a "regularly used" telephone "not . . . installed . . . just for [the] purpose" of surveillance. The conduct of the Orlando

---

[5] A party-line user's privacy is obviously vulnerable, but it does not necessarily follow that his telephone conversations are completely unprotected by § 605. In many areas of the country private telephone lines are not available; in other areas they are available only at higher rates than party lines. There is nothing in the language or history of § 605 to indicate that Congress meant to afford any less protection to those who, by virtue of geography or financial hardship, must use party-line telephones.

police, deliberately planned and carried out, clearly amounted to interception of the petitioners' communications within the meaning of § 605 of the Federal Communications Act.[6]

## II.

The remaining question is whether the recordings that the police obtained by intercepting the petitioners' telephone conversations were admissible in evidence in the Florida trial court, notwithstanding the express prohibition of federal law against divulgence of recordings so procured.

Section 605 was enacted as part of the Federal Communications Act of 1934, 48 Stat. 1103, six years after the Court had said in *Olmstead* v. *United States,* 277 U. S. 438, 465, that "Congress may of course [legislate to] protect the secrecy of telephone messages by making them, when intercepted, inadmissible in evidence . . . ." In *Nardone* v. *United States,* 302 U. S. 379, the Court was first called upon to decide whether § 605 had indeed served to render evidence of intercepted communications inadmissible in a federal trial. In that case the Government urged that "a construction be given the section which. would exclude federal agents since it is improbable Congress intended to hamper and impede the activities of the government in the detection and punishment of crime." 302 U. S., at 383. In reversing the judgment of conviction, the Court's answer to that argument was unequivocal:

"[T]he plain words of § 605 forbid anyone, unless authorized by the sender, to intercept a telephone message, and direct in equally clear language that '*no person*' shall divulge or publish the message or its

---

[6] Section 605 prohibits interception and divulgence of intrastate as well as interstate communications. *Weiss* v. *United States,* 308 U. S. 321.

substance to 'any person.' To recite the contents of the message in testimony before a court is to divulge the message. The conclusion that the act forbids such testimony seems to us unshaken by the government's arguments.

.        .        .        .        .

"Congress may have thought it less important that some offenders should go unwhipped of justice than that officers should resort to methods deemed inconsistent with ethical standards and destructive of personal liberty. The same considerations may well have moved the Congress to adopt § 605 as evoked the guaranty against practices and procedures violative of privacy, embodied in the Fourth and Fifth Amendments of the Constitution." 302 U. S., at 382, 383.

Fifteen years later, in *Schwartz* v. *Texas,* 344 U. S. 199, the Court considered the question whether, despite § 605, telephone communications intercepted by state officers could lawfully be received in evidence in state criminal trials. That case was decided in the shadow of *Wolf* v. *Colorado,* 338 U. S. 25, which shortly before had held that "in a prosecution in a State court for a State crime the Fourteenth Amendment does not forbid the admission of evidence obtained by an unreasonable search and seizure." 338 U. S., at 33. The Court in *Schwartz* recognized that the problem before it was "somewhat different" from the one that had been presented in *Wolf,* "because the introduction of the intercepted communications would itself be a violation" of federal law. 344 U. S., at 201. But the Court nonetheless concluded that state trial courts were not required to reject evidence violative of § 605. For if, as *Wolf* had held, state courts were free to accept evidence obtained in violation of the Federal Constitution, the

Court reasoned that they could not be required to reject evidence obtained and divulged in violation of a federal statute. That was the thrust of the *Schwartz* opinion:

> "Although the intercepted calls would be inadmissible in a federal court, it does not follow that such evidence is inadmissible in a state court. Indeed, evidence obtained by a state officer by means which would constitute an unlawful search and seizure under the Fourth Amendment to the Federal Constitution is nonetheless admissible in a state court, *Wolf* v. *Colorado*, 338 U. S. 25, while such evidence, if obtained by a federal officer, would be clearly inadmissible in a federal court. *Weeks* v. *United States*, 232 U. S. 383." *Ibid.*

The fact that a state official would be violating the express terms of the federal statute by the very act of divulging the intercepted communications as evidence for the prosecution at the trial, the Court in *Schwartz* said, was "simply an additional factor for a state to consider in formulating a rule of evidence for use in its own courts." *Ibid.* But in *Benanti* v. *United States*, 355 U. S. 96, five years later, the Court returned to the teaching of *Nardone* in giving emphatic recognition to the language of the statute that itself makes illegal the divulgence of intercepted communications. In *Benanti* the Court held inadmissible in a federal trial communications that had been intercepted by state officers.[7] "Section 605," the Court said, "contains an express, absolute prohibition against the divulgence of intercepted communications." 355 U. S., at 102.

---

[7] It was not until two Terms later, in *Elkins* v. *United States*, 364 U. S. 206, that the Court repudiated the "silver platter doctrine," under which evidence obtained by state officers in violation of the Fourth and Fourteenth Amendments could be received as evidence in federal courts.

After the *Benanti* decision, therefore, the only remaining support for *Schwartz* v. *Texas, supra,* was the holding in *Wolf* v. *Colorado, supra,* that state courts, unlike federal courts, were free to decide for themselves whether to condone violations of federal law by accepting the products of such violations as evidence. That doctrinal underpinning of the *Schwartz* decision was, of course, completely removed by *Mapp* v. *Ohio,* 367 U. S. 643, which overruled *Wolf* and squarely held that evidence obtained by state officers in an unreasonable search is inadmissible in a state criminal trial.

In view of the *Nardone* and *Benanti* decisions,[8] the doctrine of *Schwartz* v. *Texas* cannot survive the demise of *Wolf* v. *Colorado, supra.* In the *Mapp* case, the Court in overruling *Wolf* imposed a judicially devised exclusionary rule in order to insure that a State could not adopt rules of evidence calculated to permit the invasion of rights protected by federal organic law. In the present case the federal law itself explicitly protects intercepted communications from divulgence, in a court or any other place.

But the decision we reach today is not based upon language and doctrinal symmetry alone. It is buttressed as well by the "imperative of judicial integrity." *Elkins* v. *United States,* 364 U. S. 206, 222.[9] Under our Consti-

---

[8] See also the second *Nardone* case, *Nardone* v. *United States,* 308 U. S. 338.

[9] "[I]t cannot be lawful to authorize what is an illegal act. . . . [I]f the police officer violates the Federal statute by tapping wires notwithstanding a warrant issued out of this court pursuant to New York law—if that act be illegal—those who set the act in motion have condoned if not instigated illegality. . . . [T]he warrant itself partakes of the breach, willful or inadvertent, of the Federal law. Such breach may not find sanction in the orders of courts charged with the support of the law of the land and with enforcing that

tution no court, state or federal, may serve as an accomplice in the willful transgression of "the Laws of the United States," laws by which "the Judges in every State [are] bound . . . ." [10]

Finally, our decision today is counseled by experience. The hope was expressed in *Schwartz* v. *Texas* that "[e]nforcement of the statutory prohibition in § 605 can be achieved under the penal provisions" of the Communications Act. 344 U. S., at 201.[11] That has proved to be a vain hope. Research has failed to uncover a single reported prosecution of a law enforcement officer for violation of § 605 since the statute was enacted.[12] We conclude, as we concluded in *Elkins* and in *Mapp*, that

---

law!" *In re Telephone Communications*, 9 Misc. 2d 121, 126, 170 N. Y. S. 2d 84, 89 (N. Y. Sup. Ct.).

See also *Application for Interception of Telephone Communications*, 23 Misc. 2d 543, 198 N. Y. S. 2d 572 (N. Y. Ct. Gen. Sess.).

Compare Judge Waterman's concurring opinion in *Pugach* v. *Dollinger*, 277 F. 2d 739 (denying injunction against state officer for violating § 605), aff'd *per curiam*, 365 U. S. 458:

"It is therefore presumptuous to assume that any New York State trial judge will acquiesce to the commission of a crime against the United States in his presence in his courtroom by a witness testifying under oath." 277 F. 2d, at 745.

[10] "[T]he Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, U. S. Const.

[11] Compare *Wolf* v. *Colorado*, 338 U. S. 25, at 30–31.

[12] In *Pugach* v. *Klein*, 193 F. Supp. 630, a defendant in a state criminal case attempted unsuccessfully to initiate a criminal prosecution against state officers for violations of § 605. See also *Simons* v. *O'Connor*, 187 F. Supp. 702 (denying damages in action against state officer for violation of § 605).

There seem to be only three reported prosecutions of private individuals for violations of § 605. *United States* v. *Gruber*, 123 F. 2d 307; *United States* v. *Gris*, 247 F. 2d 860; *Elkins* v. *United States*, 364 U. S. 206.

nothing short of mandatory exclusion of the illegal evidence will compel respect for the federal law "in the only effectively available way—by removing the incentive to disregard it." *Elkins* v. *United States,* 364 U. S., at 217.

*Reversed.*

Mr. Justice Black, dissenting.

In 1937, *Nardone* v. *United States,* 302 U. S. 379, held that 47 U. S. C. § 605 forbids the introduction of intercepted and divulged telephone conversations in federal courts. In *Schwartz* v. *Texas,* 344 U. S. 199 (1952), this Court held, however, that the section does not forbid the use of such evidence in state criminal trials, saying: "[W]e do not believe that Congress intended to impose a rule of evidence on the state courts." 344 U. S., at 203. I thought the holding in *Schwartz* was correct then and still think so. The Court holds, however, that § 605 now compels state courts to exclude such intercepted telephone messages from state trials. The effect of this holding is to overrule *Schwartz* v. *Texas.* The Court's holding is made despite the fact that Congress itself has not changed the section. Nor does *Mapp* v. *Ohio,* 367 U. S. 643 (1961), undermine *Schwartz* as the Court intimates, for in *Schwartz* we dealt, as we do here, with conduct that violates only a federal statute and so deserves only the sanctions contemplated by that statute. The Communications Act explicitly provides for penal sanctions, 47 U. S. C. § 501, and some civil remedies might be implied as a matter of federal law, cf. *J. I. Case Co.* v. *Borak,* 377 U. S. 426 (1964). But the creation by statute of a federal substantive right does not mean that the States are required by the Supremacy Clause to give every procedural trial remedy afforded by federal courts or that failure to afford such remedies renders the State "an accomplice in the willful transgression of 'the Laws of the United States.'" *Ante,* at 386.

I think it would be more appropriate for the Court to leave this job of rewriting § 605 to the Congress. Waiting for Congress to rewrite its law, however, is too slow for the Court in this day of the rapid creation of new judicial rules, many of which inevitably tend to make conviction of criminals more difficult. I cannot agree that there is the slightest justification for overruling *Schwartz* and would affirm these Florida gambling convictions.

MR. JUSTICE HARLAN, whom MR. JUSTICE WHITE joins, dissenting.

Congress has ample power to proscribe any particular use of intercepted telephone conversations. The question here is simply whether § 605 of the Communications Act proscribes basing state criminal convictions on such interceptions. This statutory question does not involve any constitutional exclusionary rule, cf. *Mapp* v. *Ohio,* 367 U. S. 643, or the supervisory power of this Court over the lower federal courts, cf. *Weeks* v. *United States,* 232 U. S. 383.

More than 15 years ago, in *Schwartz* v. *Texas,* 344 U. S. 199, this Court decided that § 605 did not render state convictions based on such interceptions invalid. Although arguments can be made that this decision was incorrect, the matter is hardly without difficulty. It is not at all obvious that a statute which by its terms prohibits only interception and divulgence of conversations, meant also to prohibit state-court reliance on the perfectly probative evidence gained thereby.*

---

*Nardone* v. *United States,* 302 U. S. 379, established that divulgence of intercepted communications in court was a violation of § 605. The Court went on to hold that a federal conviction resulting from such a violation was itself improper. The Court did not, however, make it clear whether the Act required that result by its own force or the Court was simply imposing that result by virtue of its supervisory power.

It disserves the proper relation between this Court and Congress to change the long-standing interpretation of a federal statute in the absence of much more convincing evidence than is here adduced that the Court originally mistook what Congress intended. The importance of the principle of *stare decisis* of course varies with the nature of the question. It is at its highest in a case such as the present: Congress has considered the wiretapping problem many times, each time against what it naturally assumed to be a stable background of statute law. To vary that background with the inclinations of members of this Court is to frustrate orderly congressional consideration of statutory problems. I would therefore adhere to *Schwartz*.

Since the Court does not reach petitioners' further contention that the interception violated their constitutional rights, I am content to dissent from the Court's determination of the statutory question and not to express views that would, at this stage, be academic.