STATE of Tennessee, Appellant,

v.

Timothy CRAWFORD, Appellee.

Court of Criminal Appeals of Tennessee,
at Knoxville.

May 5, 1989.

Permission to Appeal Denied By
Supreme Court Oct. 2, 1989.

Michael W. Ritter, Joyce, Meredith &
Flitcroft, Oak Ridge, for Timothy Craw-
ford.

Charles W. Burson, Atty. Gen. and Re-
porter, Gordon W. Smith, Asst. Atty. Gen.,
Nashville, for the State.

OPINION

WADE, Judge.

The state presents an extraordinary ap-
peal under Rule 10 of the Tennessee Rules
of Appellate Procedure from an order of
the trial court granting the defendant's mo-
tion to suppress the tape recordings of a
January 17, 1988, conversation.

The sole question presented on appeal is
whether the evidence was properly sup-
pressed.

This court sets aside the order of sup-
pression and remands the cause to the trial
court.

Following a December 1987 burglary and larceny at Rittenberry's Sporting Goods Store in Clinton, Ronnie Daugherty informed authorities of his own involvement in the caper and implicated the defendant. A second, unnamed informant also provided police with information about the offense.

Daugherty was offered immunity from prosecution in exchange for his cooperation. On January 17, 1988, Daugherty, wired with a microphone and transmitter, went to the defendant's home and taped a conversation wherein the defendant made several incriminating remarks. Officer T.K. Beams of the Clinton Police Department monitored and taped the transmission of the conversation.

On March 1, 1988, the defendant was indicted for burglary, grand larceny, and sale of marijuana. At the hearing on the defendant's motion to suppress, the state did not produce evidence that Daugherty consented to the interception of the conversation. In fact, no testimony at all appears in the record. There was argument of counsel only.

The defendant alleged that the burden of proof was on the state to establish consent to the taping of the conversation and the state took the position that the moving party was required to establish the inadmissibility of the evidence. The trial court declined to suppress the tape Daugherty made of the conversation [1] but ruled that the officers' two tape recordings of the transmission were inadmissible on the ground that the action violated Title III of the Omnibus Crime Control and Safe Street Act of 1968. 18 U.S.C. §§ 2510–2520. The portion of the statute upon which the ruling of the trial court was based provides as follows:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, agency, regulatory body, legisla-

tive committee, or other authority of the United States, a State, or political subdivision thereof if the disclosure of that information would be in violation of this chapter.

18 U.S.C. § 2515.

The Court found that the state failed to establish the consent necessary to permit the introduction of the officers' two tapes containing the transmitted communication between Daugherty and the defendant:

It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such party is a party to the communication or one of the parties to the communication has given prior consent to such interception.

18 U.S.C. § 2511(2)(c).

For reasons unrelated to this appeal as well as Daugherty's unavailability at the time of the motion, the tapes made by the officers are critical to the state's case. After the trial court denied the state's application for a Rule 9 appeal, we granted this extraordinary appeal.

The federal statute makes it illegal for any person to willfully intercept any "wire or oral communication" imposing both criminal and civil sanctions. 18 U.S.C. §§ 2511(1), 2520. Any evidence acquired by an illegally intercepted wire or oral communication is not admissible without a showing of one party consent. 18 U.S.C. §§ 2511(2)(c), 2518(10)(a).

In this appeal the state argues that in the absence of a violation of federal constitutional rights, the congress does not have the power to impose a statutory exclusionary rule on state trial courts. It submits that the application of the federal statute would be a violation of the Tenth Amendment to the federal constitution which expressly reserves for the states the power not delegated to the United States. Secondly, the state contends that the conversation between the informant and the defendant was not an "oral communication" within the definition of the act, 18 U.S.C.

---

1. Because the tape taken by Daugherty was of apparent poor quality and not to be introduced as evidence for the state, there is no issue in this appeal as to its admissibility.

§ 2510(2); that is, the defendant had no justifiable expectation that his conversation would not be intercepted. Finally, the state submits that the trial court erred by failing to find that Daugherty, who had obviously wired himself with a listening device, had consented to the interception.

I

■ The first consideration is whether the Tenth Amendment to the United States Constitution precludes the Congress from imposing a statutory exclusionary rule upon the states. While some state courts, including the Supreme Court of Tennessee, have had the opportunity to consider the application of the Act to the states, most decisions have circumvented the central issue by holding that the facts of that case did not fall within the purview of the statute. *See State v. Williams,* 690 S.W.2d 517, 523–524 (Tenn.1985); *In Re Marriage of Lopp,* 268 Ind. 690, 378 N.E.2d 414 (1978); *State ex rel. Flournoy v. Wren,* 108 Ariz. 356, 498 P.2d 444 (1972). It therefore appears that the question is one of first impression in this state.

18 U.S.C. § 2510 *et seq.* (hereinafter referred to as Title III) is but a part of the Omnibus Crime Control Act of 1968. Prior to its passage, the United States Supreme Court had held that evidence obtained in violation of the 1934 Federal Communications Act, 47 U.S.C. § 605, a predecessor of Title III, was inadmissible in state courts. *Lee v. Florida,* 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968).

The 1934 act governed only wire or radio communications; however, the Court in *Lee* did not rely on the interstate nature of these communications to justify the constitutionality of the act as applied to the states. Instead, the Court based its holding on "the imperative of judicial integrity"; it held that "[u]nder our constitution no court, state or federal, may serve as an accomplice in the willful transgression of the law of the United States, laws by which 'the judges in every state [are] bound....'" *Id.* at 385, 88 S.Ct. at 2101. The Court concluded that enforcement of the act's exclusionary rule was necessary

to compel respect for the law by "removing the incentive to disregard it." *Id.* at 386, 88 S.Ct. at 2101.

The state argues that *Lee* is not applicable to this case because it involved a telephone communication which is intrinsically linked with interstate commerce and a proper subject of federal regulation. The holding in *Lee,* however, appears much broader. The Supreme Court did not limit the application of the 1934 statute to the state on grounds of interstate commerce. Similarly, this Court must not interpret the 1968 statute in such a restrictive manner.

While not addressing the central question, several courts have construed Title III as providing "national standards which only permit the states 'to adopt more restrictive legislation, or no legislation at all, but not less restrictive legislation.'" *United States v. Capra,* 501 F.2d 267, 276 (2d Cir.1974); (quoting Senate Report No. 1097, April 29, 1968, 1968 U.S.Code Cong. and Admin.News, 2112, 2187.) *See also United States v. Millstone Enterprises,* 684 F.Supp. 867 (W.D.Pa.1988).

In *Michigan v. Meese,* the federal district court considered whether Title III applied to the states. In that case, the court reasoned that because the Supreme Court could promote the integrity of the courts through judicial supervisory exclusionary rules not required by the Constitution, (*See, United States v. Leon,* 468 U.S. 897, 905–06, 104 S.Ct. 3405, 3411–12, 82 L.Ed.2d 677 (1984)), there was no apparent reason why Congress could not do the same. 666 F.Supp. 974 (E.D.Mich.1987) aff'd on other grounds 853 F.2d 395 (6th Cir.1988). The court in *Meese* concluded that "the Tenth Amendment does not impose an independent limitation on Congress that permits a court to reject Congress' view that a narrow aspect of a statute is 'necessary' to effectively implement its larger purposes." 666 F.Supp. at 979.

In *Meese,* the court observed that, based upon the decision in *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), "the Tenth Amendment has become a dead letter in constitutional law":

The Supreme Court has considered the scope of the Tenth Amendment, even though its teachings on that subject may be in a state of flux. Briefly, however, this much can be said: there is not a single case that can be considered "good law" that purports to overrule a federal statute on the ground that it violates the Tenth Amendment.

*Meese,* 666 F.Supp. at 977.

The current strength of the Tenth Amendment is best illustrated by a review of the decisions of the United States Supreme Court since *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976); in that case, the Court held for the first time in four decades "a congressional regulation of commerce to be an unconstitutional intrusion upon the sovereignty of state and local governments." L. Tribe, *American Constitutional Law,* § 5–22 at 308 (1978). The Court struck down an amendment to the Fair Labor Standards Act of 1938 which extended federal minimum wage standards to state employees. Although it found the provisions to be within the scope of the Commerce Clause, the Court determined that these matters were "essential to the separate and independent existence" of the states. *Id.* at 845, 96 S.Ct. at 2471. The Court viewed the federal law as impairing a state's authority with respect to areas of traditional state functions. *Id.* at 852, 96 S.Ct. at 2474. Less than ten years later, however, in the *Garcia* case, the Supreme Court reversed itself.

In *Garcia,* the Court decided that little headway had been made "in defining the scope of the governmental functions deemed protected under *National League of Cities.*" *Id.* 469 U.S. at 539, 105 S.Ct. at 1011. The Court rejected, "as unsound in principle and unworkable in practice, a rule of state immunity from federal regulation that turns on a judicial appraisal of whether a particular governmental function is 'integral' or 'traditional'." *Id.* at 546–7, 105 S.Ct. at 1015. Ultimately, it determined that a local transit authority was not entitled to Tenth Amendment immunity from the minimum wage and over-time requirements of the Fair Labor Standards Act.

Whether the Tenth Amendment will be applied to any future issue is questionable. Its post-*Garcia* prognosis is certainly limited.

■ By the enactment of the 1968 statute governing oral and wire communications, it is clear that Congress sought to protect the privacy of such communications and intended a uniform standard for lawful interception. Sen.Rep. *supra,* U.S.Code Cong. & Admin.News at 2153. The provision at issue in this case appears to be a legitimate statutory protection of the privacy right grounded in the United States Constitution and applied to the states under the Fourteenth Amendment. The Tenth Amendment, in our opinion, does not deprive "the national government of authority to resort to all means for the exercise of a granted power which are appropriate and plainly adapted to the permitted end." *United States v. Darby,* 312 U.S. 100, 124, 61 S.Ct. 451, 462, 85 L.Ed. 609 (1941), *See Halpin v. Superior Court of San Bernardino County,* 6 Cal.3d 885, 101 Cal.Rptr. 375, 495 P.2d 1295 (1972) wherein the court upheld Title III against a Tenth Amendment claim.

The statutory exclusionary rule "plainly adapts" to the purposes of Title III; its application is a proper extension of the intentions of the Act. Without the exclusion of any evidence obtained as a result of its violation, the Act would have little deterrent effect. In our judgment, the Act provides only the minimum standards governing the interception of oral and wire communications; the states are not precluded from enacting legislation which is more restrictive. In this respect, there remains at least a modicum of power, under the Tenth Amendment, "reserved to the states."

Other courts have reasoned that the power of Congress to enact Title III did not arise from the Commerce Clause but was instead founded upon the need to protect the right of privacy. *See, United States v. Perkins,* 383 F.Supp. 922 (N.D.Ohio 1974); *United States v. Burroughs,* 379 F.Supp.

736, 741 (D.S.C.1974), aff'd on other grounds, Court dealt with jurisdiction of federal court, 564 F.2d 1111 (4th Cir.1977). This court deems the rationale of *Perkins* and *Burroughs* as equally applicable to the issue at hand: "[O]nly by striking at all aspects of the problem can privacy be adequately protected." Sen.Rep. No. *supra*, U.S.Code Cong. & Admin.News at 2156. By this statement, Congress expressed its clear intention:

[J]udicial exclusion of improperly obtained communications [is] 'necessary and proper' to execute [Congress'] other intentions in Title III. As noted above, these other intentions include judicial integrity, which, ... was dispositive in the Supreme Court's decision in *Lee* to uphold the predecessor statute to section 2515. In short, *Congress agrees with the Supreme Court that a bright-line rule of exclusion is best suited to protect the federal interests at stake.* Such bright-line rules are always best addressed in the political arena rather than in the courts, since they evolve against the background of law developed on an *ad hoc* basis by the courts.

*Meese* at 979. (citations omitted) (emphasis added.)

This Court holds that the Tenth Amendment does not preclude the application of the exclusionary rule of Title III to the states.

The state's contention is without merit.

### II and III

The state also asserts that the conversation between the informant and the defendant was not an "oral communication" within the definition of the act. It argues that the defendant had no justifiable expectation that the communication would not be subject to interception. *See* 18 U.S.C. § 2510(2). *See Wilks v. Commonwealth,* 217 Va. 885, 234 S.E.2d 250, 252–253 (1977). Several courts interpreting this portion of Title III have found certain conversations not to be "oral communications" within the meaning of the act. These rulings are based upon findings that the speaker had no "reasonable expectation of privacy."

*See United States v. Harrelson,* 754 F.2d 1153 (5th Cir.1985); *United States v. Pui Kan Lam,* 483 F.2d 1202 (2nd Cir.1973).

In the context of the privacy expectation of intercepted conversations, the United States Supreme Court has held as follows:

Concededly a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights. For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere to other agents monitoring the transmitting frequency. If the conduct and revelation of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and *whose trustworthiness the defendant necessarily risks.*

*United States v. White,* 401 U.S. 745, 751, 91 S.Ct. 1122, 1125–1126, 28 L.Ed.2d 453 (1971). (emphasis added.)

The language of Title III defines "oral communication" as follows:

"Oral communication" means any oral communications uttered by a person *exhibiting an expectation that such communication is not subject to interception* under circumstances justifying such expectation, but such term does not include any electronic communication.

(emphasis added.) It is a reflection of the constitutional "reasonable expectation of privacy" test. In *White,* the Court determined that a one party consensual surveillance does not violate that test. As such, it

is not within the definition of Title III's "oral communications."

In *State v. Williams*, 690 S.W.2d 517, 524 (Tenn.1985), the Tennessee Supreme Court held that under the circumstances of that case Title III was inapplicable because the defendant had no "justifiable expectation of privacy." In *Williams*, however, proof was presented that the defendant suspected that he was being taped.

The Tennessee Courts have many times upheld the admission of a tape recording of a conversation obtained when one party to the conversation consents to the recording. *See State v. Morris*, 666 S.W.2d 471 (Tenn. Crim.App.1983); *State v. Lee*, 618 S.W.2d 320 (Tenn.Crim.App.1981); *Clariday v. State*, 552 S.W.2d 759 (Tenn.Crim.App. 1976). Whether the conversation between Daugherty and the defendant is an "oral communication" and, therefore, within the proscription of the federal state rests upon the resolution of the third issue presented by this appeal.

■■■ Was there sufficient evidence to establish that Daugherty consented to the taping?

While one may not have a justifiable expectation that a confederate will keep one's confidences secret, one might certainly expect that when he does reveal that conversation, it would be on a voluntary basis. While the Court in *White* held that the defendant did not have a justifiable expectation of privacy, the issue of consent was never reached. *White*, 401 U.S. at 747, 91 S.Ct. at 1123, n. 1.

The determinative question in this appeal is whether the evidence preponderates against the finding of the trial court that Daugherty did not consent to the interception of the conversation between himself and the defendant. If the trial court is correct, the 1968 statute is applicable and the crucial tapes are excluded. Unfortunately, this record is inadequate for this court to make the determination.

18 U.S.C. § 2511(2)(c) provides as follows:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral or electronic communication, where such person is a party to the communication or one of the parties to the communication has given *prior consent* to the interception. (Emphasis added.)

Both the terms of the statute and the holding of *White* require a finding by the trial court on the issue of consent.[2]

In this instance, neither the state nor the defendant presented any proof. Based upon the arguments of counsel and the memoranda of law, the trial court held that there was no showing that the officers' tapes were made with Daugherty's consent.

The defendant, however, must meet a minimum level of proof before that burden to establish one-party consent shifts to the state.

■■■ One who contests the validity of a search must first demonstrate that he held a legitimate expectation of privacy in the place or property searched. *State v. Roberge*, 642 S.W.2d 716 (Tenn.1982); *State v. White*, 635 S.W.2d 396 (Tenn.Crim.App. 1982). Similarly, one contesting the admissibility of evidence under the federal statute must also establish standing. *See United States v. Wright*, 524 F.2d 1100 (2nd Cir.1975).

Each side made factual representations to the trial court in their respective arguments. For example, the defendant made the following assertions:

> As a result of Mr. Daugherty's participation and this particular recording he was given an immunity upon agreement between the state and Mr. Daugherty that he would be immune from prosecution on this particular offense. My position is: As a result of that he was induced or under undue pressure to record these statements that were intercepted

**2.** Title III was enacted before the holding in *White*. This perhaps explains why the statutory definition of "oral communications" tracks the constitutional definition and includes an exemption for consensual recordings.

by Officer Beams, acting as a conduit. And as a consequence did not give his consent. There has been no document throughout this entire preliminary hearing. There has been two or three parole hearings. There has been no document produced that shows a consent form by Mr. Daugherty.

The state responded as follows:

Now, Mr. Daugherty, for purposes of what this Court is hearing, was a willing participant in this even though he was induced possibly by an offer of immunity. He went in. He was allowed in. No allegation that he forced his way in –uh– and he went in and got a conversation. This is a typical case of misplaced confidence, where the U.S. Supreme Court refers to as misplaced confidence. Mr. Crawford didn't know that he was wired, didn't know that he was cooperating with the police and, therefore, placed his confidence in –uh– in this informant and talked freely to him, which the informant recorded and which recording was going to the police –uh– no violation of any— This is consensual –uh– taping by one party to the conversation.

All argument was based upon written memoranda filed on behalf of the defendant and the state. There are several references to both preliminary and parole hearings, neither of which appear in this record.

Because the trial court obviously accepted as fact portions of each argument, this court has no record from which to determine whether the findings have a sufficient basis.

Much like the situation in which a search is challenged, the defendant "has the burden of showing that there was a violation of some constitutionally protected (statutorily protected in this instance) area to trigger further inquiry...." D. Raybin, *Tennessee Criminal Practice and Procedure,*

§ 18.10 at 543 (1984). Because the defendant presented no proof, he clearly did not meet this burden.

This court would note, however, that the defendant's counsel did claim Daugherty's consent was given after an offer of immunity. Although this fact alone will not render the consent involuntary, it may constitute favorable evidence to the defendant. *United States v. Barnes,* 634 F.2d 387 (8th Cir.1980). On the other hand, if the consenting party was unavailable at the suppression hearing, that does not necessarily prevent the state from proving consent by other means. *United States v. Traficant,* 558 F.Supp. 996 (D.C.Ohio 1983).

Ordinarily, the failure on the part of the defendant to present sufficient evidence to show a violation of his rights so as to shift the burden of proof to the state would be fatal. That obligation is clear. In this instance, however it is apparent that the lack of precedent handicapped the proceeding. The procedural confusion resulted in a record devoid of fact.

Accordingly, this court reverses the order of the trial court and hereby remands this cause for an evidentiary hearing on the issue of consent. The application of the federal statute is wholly dependent upon the resolution of that issue. Each party shall be afforded the opportunity to present evidence on the question. This court makes no suggestion as to the ultimate determination.

BYERS, J., and RICHARD R. FORD, Special Judge, concur.