Jasen, J.
The crucial issue in this case concerns the admissibility of certain recordings of defendant’s voice obtained as a result of a wiretap made pursuant to court order. We conclude that the admission of the evidence was violative of neither the constitutional nor statutory rights of defendant and that, consequently, his conviction should be affirmed.
In May of 1966, the Mount Vernon Police Department received a tip from an informant, who had previously proven reliable, that a public telephone in George’s Pharmacy was being used to transmit horse racing and sporting bets. A detective assigned to observe this location noticed defendant, a known and" convicted gambler, repeatedly leave his office (where there was a telephone) and use this public phone booth. Moreover, on one occasion, he overheard defendant discussing baseball lines and quoting odds on that day’s games. On the basis of this information, the police secured an order from the Westchester County Court authorizing them to intercept and record conversations over that telephone line.
Pursuant to that order, a tap was installed on May 18, 1966, and was frequently monitored by the police. On June 15, the tap was being monitored by Detective Burke, who overheard several sports bets being transmitted. He immediately contacted two other officers, who then entered the pharmacy and went to the telephone booth. These officers possessed a search warrant authorizing them to search defendant’s person. They discovered defendant in the phone booth with the receiver in his hand and with an envelope and two slips of paper lying nearby. He was asked to step out of the phone booth, where a search of his person revealed $1,495.42 in cash and several other slips of *180 paper. An additional $5,000 in cash was found in the envelope and all of the slips contained sports bets and gambling odds.
The tape of defendant’s telephone conversation, which was introduced over his objection at trial, revealed the taking of several bets. Detective John Roach identified one of the records introduced in evidence as a record of the three-team-parlay bet which the taped conversation concerned. Richard Burke, the detective who made the recording, identified the voice of the defendant on the tape as the receiver of this bet. Also, at the trial, Stephen Fein, the defendant’s son, testified in his father’s defense. He contended that the cash possessed by defendant was the proceeds of a loan which he (Fein) had obtained to purchase certain machinery for his business. However, no business records were produced to verify this claim.
Upon this record, defendant was convicted by the City Court of Mount Vernon of the crimes of bookmaking and possession of .bookmaking records (former Penal Law, §§ 986, 986-b). For these convictions, defendant was sentenced to concurrent terms of 30 days’ imprisonment.
The defendant argues on this appeal that the introduction of evidence obtained by wiretapping was constitutionally impermissible and should have been excluded at the trial. In addition, the defendant urges that the order authorizing the telephone interception was void because it violated section 605 of the Federal Communications Act.
At the time the authorized telephone interception occurred, there were no significant Federal constitutional restraints relative to securing and using wiretap evidence. The basic pronouncement by the Supreme Court in this area remained Olmstead v. United States (277 U. S. 438), which explicitly held that a wiretap, conducted without a physical intrusion into the defendant’s premises, was not an unlawful search and seizure within the meaning of the Fourth Amendment. It is thus clear that at the time the wiretap occurred, the intrusion did not violate the Olmstead rule. Moreover, at the time, such conduct in New York was regulated by section 813-a of the Code of Criminal Procedure, which specified procedures for obtaining a court order authorizing a wiretap. There is no contention made here that the dictates of that section were not scrupulously followed.
*181 However, the period between the seizure of the evidence and the judgment of conviction[1] was a time of rapidly changing constitutional interpretation in this area. Kats v. United States (389 U. S. 347) specifically invalidated the long-standing Olmstead rule and declared that nontrespassatory seizures were also constitutionally prohibited. Additionally, in Berger y. New York (388 U. S. 41), the Supreme Court declared that section 813-a of the Code of Criminal Procedure was at least partially unconstitutional for its overbreadth.[2]
Consequently, the specific problem arising out of this rapidly changing complex of decisional law is to determine precisely what constitutional rule is applicable to this prosecution. The Supreme Court has addressed itself to this perplexing question in two recent cases and, seemingly has provided a rather clear answer. In Desist v. United States (394 U. S. 244), the court held that Kats is to be applied prospectively only. This was further explained in Kaiser v. New York (394 U. S. 280) to mean that if "the wiretapping in this case occurred before Kats was decided and was accomplished without any intrusion into a constitutionally protected area of the petitioner, its fruits were not inadmissible under the exclusionary .rule of the Fourth and Fourteenth Amendments.” (394 U. S. 280, 282-283.) Kaiser also instructs us that the Berger decision is not applicable retroactively. The court there affirmed-a decision of this court (see 21 N Y 2d 86) wherein wiretap evidence had been seized pursuant to section 813-a— later declared unconstitutional in Berger. The Supreme Court, thus, affirmed our holding that the Berger decision should be given only prospective application (21 N Y 2d, at p. 98).
A careful examination of the Desist and Kaiser decisions reveals that the determinative factor in both cases centers on the date upon which the seizure of the evidence occurred. (See 394 TJ. S., at p. 282.) Hence, if the evidence was seized in a manner constitutionally permissible at the time of seizure, it *182 will subsequently be allowed into evidence at the defendant’s trial even though changing constitutional interpretations have since made a similar seizure impermissible.[3] Since it cannot be seriously contended here that the seizure was constitutionally defective by 1966 standards, we conclude that the recordings were properly allowed into evidence at defendant’s later trial.
While it is true that the wiretap order was issued in 1966 under a subsequently declared unconstitutional law, the basis upon which it was authorized closely approximates the standards set forth in Berger. A close examination of the Berger decision reveals that the major constitutional objections to section 813-a were twofold — the fact that the statute only required a reasonable ground to believe that a crime had been committed (rather than probable cause) and a lack of particularity in description of what was to be seized and the evidence sought. Here, there obviously was probable cause for the seizure by reason of the extensive observation of defendant’s suspicious activities. Defendant, a known and convicted gambler, was seen to frequently use a public telephone booth, despite having access to a private telephone at his office. Upon one occasion, a police officer personally heard defendant discussing sports lines on baseball games and quoting odds on the day’s games to someone with whom he was in contact on that telephone. Thus, the primary constitutional defect denominated in the Berger case was certainly not present here. Moreover, the affidavit in support of the wiretap order specifically described the defendant and his suspected gambling activities, including the specific location to be observed. Under such circumstances, any deviation from the standards enunciated in Berger and Katz must be considered as harmless in light of the overwhelming evidence against defendant.
We turn then to the second question posed—that the introduction of the wiretap evidence was prohibited by section 605 of the Communications Act of 1934 (U. S. Code, tit. 47, § 605). Section 605, as it read in 1966, stated, in pertinent part, that *183 “no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person”. This section has been interpreted to prohibit all wiretapping of telephonic communications (see Pugach v. Sullivan, 180 F. Supp. 66, affd. 277 F. 2d 739, affd. 365 U. S. 458; Diamond v. United States, 108 F. 2d 859), except where one party consented to the interception (United States v. McGuire, 381 F. 2d 306, 314, cert. den. 389 U. S. 1053). This ban upon the interception and divulgence of communications applied to both intrastate and interstate activities. (Weiss v. United States, 308 U. S. 321; People v. Broady, N Y 2d 500, cert. den. 361 U. S. 8.)
While the Supreme Court has long held that evidence seized in violation of section 605 was inadmissible in a Federal court (Nardone v. United States, 302 TJ. S. 379), it specifically ruled that section 605 “ does not exclude such evidence in state court proceedings ” (Schwartz v. Texas, 344 U. S. 199, 203). Thus, at the time the wiretap order was issued in this case, such action was in violation of section 605, but the evidence was admissible in a State criminal proceeding.
After the Federal exclusionary rule had been made applicable to the States by Mapp v. Ohio (367 U. S. 643), the Supreme Court took occasion to reconsider Schwarts, in Lee v. Florida (392 U. S. 378, decided June 17, 1968), holding that evidence seized in violation of section 605 was also inadmissible in State criminal proceedings. In Fuller v. Alaska (393 U. S. 80), the court held that Lee should be given only prospective effect and “ applied only to trials in which the evidence is .sought to be introduced after the date of our decision in Lee.” (Id., at p. 81.)
Consequently, defendant argues that Lee and Fuller mandate the exclusion of the wiretap evidence here. We cannot agree. Two days after Lee was decided, the Omnibus Crime Control and Safe Streets Act of 1968[4], which included substantial amendments to section 605, became law. In title III, Congress for the first time enacted a comprehensive scheme authorizing the interception of telephonic communications and specifically authorized the introduction of overheard evidence in court under denomi *184 nated comprehensive standards. (U. S. Code, tit. 18, §§ 2511-2519.)
Therefore, the question posed is whether section 605, as amended, bars the introduction of evidence obtained as a result of a court-ordered wiretap authorized prior to the amendment.
We believe that Congress did, in fact, intend to sanction prior wiretapping as indicated by its findings enacted as section 801 of the Omnibus Crime Control and Safe Streets Act of 1968, wherein Congress found:
' (a) * * *
“ There has been extensive wiretapping carried on without legal sanctions, and without the consent of any of the parties to the conversation. Electronic, mechanical, and other intercepting devices are being used to overhear oral conversations made in private, without the consent of any of the parties to such communications. The contents of the communications and evidence derived therefrom are being used by public and private parties as evidence in court and administrative proceedings, and by persons whose activities affect interstate commerce
# * S
“ (b) In order to protect effectively the privacy of wire and oral communications, to protect the integrity of court and administrative proceedings, and to prevent the obstruction of interstate commerce, it is necessary for Congress to define on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized, to prohibit any unauthorized interception of such communications, and the use of the contents thereof in evidence in courts and administrative proceedings.
“ (c) Organized criminals make extensive use of wires and oral communications in their criminal activities. The interception of such communications to obtain evidence of the commission of crimes or to prevent their commission is an indispensable aid to law enforcement and the administration of justice.”
These legislative findings, made prior to the Lee decision, at a time when Schwarts was still viable, seem to clearly indicate the acceptance by the Federal Legislature of the then generally accepted practice of introducing in State courts the fruits of court authorized wiretaps. There can be no doubt that the pur *185 pose of the exclusionary rule enunciated in Lee was to enforce compliance with the Federal Communications Act. This rule was built upon an assumption—enunciated in the Nardone case — that Congress intended to bar wiretapping by enacting section 605 in 1934. The error in the assumption, however, became apparent subsequent to the Supreme Court’s decision in Lee when the Congressional findings enacted as section 801 of the Omnibus Crime Control and Safe Streets Act of 1968 made it abundantly clear that the court had been misreading the Congressional silence in the years since the decision in Schwarts. (Cf. Black, J., dissenting in Lee v. Florida, supra, at pp. 387-388.) Thus, the enactment of the Safe Streets Act should remove any doubt as to the intent of Congress in this area of the law, and it is axiomatic that on questions of legislative intent, the Legislature is supreme.
To exclude the wiretap evidence in this case on the basis of Lee would, in effect, be enforcing a statutory policy, since substantially modified and no longer applicable. We believe the well-established rule, that we give effect to the law as it exists at the time of our decision, should be adhered to. (People v. Loria, 10 N Y 2d 368, 370; Knapp v. Fasbender, 1 N Y 2d 212, 243.)
The question remains as to whether strict compliance with the provisions of the Safe Streets Act or the newly-amended Code of Criminal Procedure is necessary in this case. We think not and hold that in seizures made before the effective date of the Safe Streets Act, substantial compliance with its provisions is all that is required to bring the evidence within the newly-enacted exception in section 605. The crucial fact is that Congress has clearly indicated a policy to allow courtroom use of judicially supervised and controlled wiretaps. Thus, in light of this clearly enunciated policy, it would seem to defeat Congressional intent to require a technical compliance with chapter 119 of title 18 of the United States Code since this would result in the virtual inadmissibility of almost all wiretap evidence obtained before the passage of the Act. Consequently, if on such wiretaps there is a clear showing of substantial compliance with the new standards, the evidence will be deemed admissible.
There can be little doubt that such substantial compliance was present here. The wiretap was obtained under judicial super *186 vision, in full compliance with section 813-a of the Code of Criminal Procedure, with probable cause for the seizure clearly indicated. Thus, there seems to be no valid reason to exclude such evidence especially since the police acted in full compliance with both constitutional law and the statutory law of our State as it existed at that time.
We have examined the other contentions raised by defendant and find them to be without merit.
Accordingly, the judgment of conviction should be affirmed.

. The conversation was recorded June 15, 1966, and defendant was convicted July 31, 1969,

. The New York Legislature responded to this decision by enacting title III of part VI of the Code of Criminal Procedure (§§ 814-825), which contains provisions designed to meet the constitutional objections enunciated in the Berger ease.

. The rationale behind such a dichotomy is quite apparent. The deterrent purpose of an exclusionary rule such as this would not be furthered by excluding evidence seized in a manner that was constitutionally acceptable at that time. Moreover, an exclusionary rule has no real bearing on guilt or the fairness of the trial. (Linkletter v. Walker, 381 U. S. 618, 638-639.)

. Public Law, 90-351; 82 U. S. Stat. 197.