UNITED STATES ex rel. Nancy ROS-
NER, on behalf of Joseph Winograd
and Dominic Montemarano, Petitioners,

v.

WARDEN, GREEN HAVEN PRISON,
STORMVILLE, NEW YORK, and Com-
missioner of Correction for the State of
New York, Respondents.

No. 74 Civ 1741.

United States District Court,
S. D. New York.

July 2, 1974.

Rosner, Fisher & Scribner, New York
City, for petitioners.

Richard H. Kuh, Dist. Atty., New
York County, for respondents; Lewis R.
Friedman, Robert A. Goldschlag, Asst.
Dist. Attys., of counsel.

GURFEIN, District Judge:

This is a petition for a writ of habeas
corpus brought on behalf of Joseph Win-
ograd and Dominic Montemarano.
Dates are important to an understand-
ing of the legal issues raised.

Winograd seeks relief from a judg-
ment of the Supreme Court, New York
County, rendered January 3, 1972, con-
victing him, upon his plea of guilty to
thirteen counts of Criminal Usury under
former N.Y. Penal Law § 2401, seven
counts of Criminal Usury under New
York's revised Penal Law § 190.40,
McKinney's Consol.Laws, c. 40 and vari-
ous other counts charging violations of
the Penal Law. He was sentenced to an
indeterminate term of imprisonment not
to exceed three years. Montemarano
seeks relief from a similar judgment
rendered on December 17, 1971, convict-
ing him on his plea of guilty of Crimi-
nal Usury under New York's revised Pe-
nal Law § 190.40, and Conspiracy in the
Third Degree under revised Penal Law §
150.05. He was also sentenced to an in-

determinate term of imprisonment not to exceed three years.

Before the pleas of guilty, a motion to suppress intercepted wiretapped conversations pursuant to state court order was made. It was denied on the authority of People v. Feinlowitz, 29 N.Y.2d 176, 324 N.Y.S.2d 62, 272 N.E.2d 561 (1971), cert. denied, 405 U.S. 963, 92 S. Ct. 1175, 31 L.Ed.2d 239 (1972).

On their appeal to the Appellate Division, both convictions were unanimously affirmed without opinion. People v. Winograd, App.Div., 352 N.Y.S.2d 1008 (1st Dept. 1974). An application to the Court of Appeals for permission to appeal was denied. The petitioners' attack in the Appellate Division and in this Court is on the ground that eavesdropping conducted against the petitioners was in violation of Section 605 of the Federal Communications Act and that the warrants for the interception were void because they failed to specify the date upon which they were to take effect.[1] They contend that People v. Feinlowitz, *supra,* is not binding on the federal courts and was wrongly decided.

### The Wiretap Orders

In 1967 the District Attorney of New York County was investigating a purported conspiracy among Joseph Winograd, his wife, Sylvia, Carmine Persico and Dominic Montemarano to engage in loan-sharking. From an informant named Lessner in the Winograds' employ, it was learned that the Winograds were operating a loan-sharking business from their fur establishment at 150 West 28th Street, Manhattan. The informant supplied the District Attorney with a list of twenty-six people who had borrowed money from the Winograds in amounts ranging from a few hundred dollars to nearly ten thousand dollars at usurious rates. The informant divulged that the Winograds used the telephone at their business to arrange for the usurious loans and the means for their collection. They also were said to be using the telephone to reach Persico when he was needed to collect a debt by force. A meeting between the informant and the putative defendants was observed, as one incident of which Montemarano grabbed the informant by the lapels of his overcoat and pushed him up against the building.

The District Attorney and an assistant made an affidavit to Justice Gellinoff dated February 23, 1968, substantially reciting the above and applying for an order to intercept the conversations of those named above on all three telephones at Winograd Furs, Inc. Justice Gellinoff granted the application in an order dated February 26, 1968. The warrant authorized the interception of conversations pertaining to named crimes, at specified telephones, for a maximum of 30 days from the effective date during business hours, but the judge failed to insert "the effective date" when the interceptions were to begin, allegedly because the District Attorney did not know when the wiretap could actually be installed. The order was, however, clearly dated February 26, 1968.[2]

Pursuant to the warrant the police intercepted a number of conversations involving the Winograds, the informant Lessner, Montemarano and Persico. In many of those conversations borrowers were threatened;[3] in others, usurious loans were negotiated or renegotiated.[4]

On April 3, 1968 Justice Gellinoff signed a second order authorizing interception of the telephone conversations for an additional thirty days.[5]

In 1969 Persico, Lessner (the informant) and the Winograds were indict-

---

1. Before Montemarano entered his plea of guilty, the District Attorney stipulated that Winograd's motion to suppress should be deemed made by Montemarano as well.

2. A 321–24.

3. A 83, 90

4. A 86, 90

5. A 77–80. This time he inserted the effective date—April 3, 1968.

ed on various counts of usury, grand larceny by extortion, coercion and related charges. The indictment charged that the Winograds and Lessner would lend money at rates of interest ranging from about 140 per cent per annum to about 260 per cent per annum; and that Persico would enforce the usurious agreements by use of physical force. In a separate indictment Montemarano was charged with various counts of usury, conspiracy, grand larceny by extortion and related crimes.

On October 6, 1971, Winograd moved to suppress the evidence from the wiretaps on the ground that the orders failed to specify the dates upon which they were to take effect, and on the ground that the eavesdropping violated Section 605 of the Federal Communications Act. They also tendered another ground not raised here, which is irrelevant. The Court denied the motion. As noted above, each petitioner then pleaded guilty.

### I

The petitioners do not contend that there was any lack of probable cause for Justice Gellinoff's order. Nor do the People contend that the petitioners may not attack the state convictions because they pleaded guilty.

■ In New York, Section 710.70(2) of the Criminal Procedure Law, McKinney's Consol.Laws, c. 11–A provides that an order denying a motion to suppress may be reviewed on appeal ". . . notwithstanding the fact that . . . judgment is entered upon a plea of guilty." Since the petitioner is pursuing sanctioned state procedure to preserve his federal constitutional claims, he has not waived his right to present these claims to a federal court. United States ex rel. Rogers v. Warden of Attica State Prison, 381 F.2d 209 (2

Cir. 1967); United States ex rel. Stephen J. B. v. Shelly, 430 F.2d 215 (2 Cir. 1970). The petitioners, having exhausted state appellate procedures, are entitled to seek review through federal habeas corpus.

### II

The wiretap orders under old Section 813a of the Code of Criminal Procedure were issued on February 26, 1968 and April 3, 1968. At that time the law relating to the exclusion in state trials of evidence seized in violation of federal law, the constitutional validity of statutes allowing warrants for the electronic interception of conversations and the elements required to make an electronic search illegal under the Fourth Amendment were in a state of change.

In early 1968 the exclusionary rule .with respect to *state* courts was still governed by Schwartz v. Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231 (1952), which had been decided in the shadow of Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). Thus, although evidence obtained by wiretapping was inadmissible in the federal courts because of Section 605 of the Federal Communications Act, Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937), such evidence, could, nevertheless, be admitted in the state courts under Schwartz v. Texas, *supra*.[6] On June 17, 1968—*after* the electronic interceptions here involved—Lee v. Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166, overruled Schwartz v. Texas because its "doctrinal underpinning" had been completely removed by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Court held in *Lee*: ". . . that statute [§ 605], we hold today, also made the recordings of the petitioners' telephone conversations inadmissible as evidence in the Florida court." 392 U.S. at 380.

---

6. 47 U.S.C. § 605 reads in pertinent part:
   "[N]o person not being authorized by the sender shall intercept any communication and divulge . . . the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. . . ." .

The question arose quickly of whether *Lee* was to be applied retrospectively. In Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (Oct. 28, 1968), the Supreme Court of Alaska had held that a telegram unlawfully obtained in violation of Section 605 was lawfully introduced in a trial held in April 1968—two months *before* the *Lee* decision. See Fuller v. State, Alaska, 437 P.2d 772, 775. The U.S. Supreme Court affirmed, stating: ". . . we hold that the exclusionary rule is to be applied only to trials in which the evidence is sought to be introduced after the date of our decision in *Lee*" (June 17, 1968). 393 U.S. at 81. It should be noted that in the *Fuller* case both the interception and the trial occurred before June 17, 1968; see also Kaiser v. New York, 394 U.S. 280, 89 S. Ct. 1044, 22 L.Ed.2d 274 (1969) where the wiretap interception and the trial also were *both* before June 17, 1968.

In *Kaiser,* telephone conversations had been intercepted by wiretapping in 1964 pursuant to a warrant issued under N.Y. Code of Criminal Procedure § 813–a. They were held not excludable under the Fourth and Fourteenth Amendments in spite of the subsequent decision in Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (June 12, 1967). Though the warrant in the case at bar was issued by Justice Gellinoff *after* the *Berger* decision, and might appear to be invalid under that decision, the Court has instructed us in *Kaiser* that the court in *Berger* simply "found the overbreadth of N.Y. Code Crim.Proc. § 813–a repugnant to the Fourth Amendment *only* to the limited extent that it permitted 'trespassory intrusion into a constitutionally protected area.' " 394 U.S. at 282 (emphasis supplied). It will be recalled that in *Berger* the offending electronic device was not a wiretap but a "bug" which had been planted in an office by an act of trespass.

Despite its apparent validity under the Fourth and Fourteenth Amendments, the order of Justice Gellinoff was, nevertheless, in violation of Section 605 as it then stood. Benanti v. United States, 355 U.S. 96, 103–06, 78 S.Ct. 155, 2 L.Ed.2d 126 (1957). Schwartz v. Texas had merely held that the use of illegal evidence in a state court was not barred *despite* the violation. It had not said that wiretapping of any sort was legal. This was the view taken by the Court in Kaiser v. New York, *supra.* Addressing itself to the specific problem —the interception of telephone conversations by wiretapping pursuant to an order of the New York Supreme Court under § 813–a of the Code of Criminal Procedure—the Court in *Kaiser* assumed that there was a *violation* of Section 605 but held that the extension by *Lee* of the *Nardone* exclusionary rule of Section 605 to the states had only prospective application. Again, our precise problem was not decided but the Court noted that "[t]he wiretapping evidence was introduced at the petitioner's trial in 1966, long before the date of our decision in *Lee.*" 394 U.S. at 283. The Court did not focus on the date of the wiretapping itself.

In these circumstances we cannot assume that the Supreme Court in considering the retrospective application of *Lee* in *Fuller* and *Kaiser* had reason to distinguish between seizure and trial with respect to the proper date of cleavage. That issue has not been before the Supreme Court.

It has been before the New York Court of Appeals, however, in People v. Feinlowitz, supra.[7] There the majority held that in enacting the Omnibus Crime Control and Safe Streets Act ("Safe Streets Act"), Public Law 90–351; 82 Stat. 197, 18 U.S.C. § 2510 et seq., enacted June 19, 1968, two days after *Lee* was decided, Congress intended to sanction prior wiretapping. The Court reasoned that the purpose of the exclusionary rule in *Lee* was to enforce compliance with the Federal Communications

---

7. In *Feinlowitz,* the wiretap order was in May, 1966 and the conversation was recorded June 15, 1966. The defendant was convicted July 31, 1968—*after Lee.* 29 N.Y.2d 176, 181 n. 1.

Act but that Congress had now shown its intent to the contrary in this area of the law by sanctioning court supervised wiretapping. Accordingly, the fruit of the court-ordered wiretap was held to have been properly received in evidence at a trial after *Lee.*

I agree with the result but for somewhat different reasons, since I am not convinced that a later Congress should be thought to express the intent of a statute enacted by an earlier Congress.

The essential reason for the non-retroactive rule was stated in Linkletter v. Walker, 381 U.S. 618, 636–37, 85 S.Ct. 1731, 1741, 14 L.Ed.2d 601 (1965). There, in holding that Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) was not to be applied retroactively, the Court declared: ". . . all of the cases since *Wolf* requiring the exclusion of illegal evidence have been based on the necessity for an effective deterrent to illegal police action. See, e. g., Rea v. United States [350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233 (1956)]. We cannot say that this purpose would be advanced by making the rule retrospective. The misconduct of the police prior to *Mapp* has already occurred and will not be corrected by releasing the prisoners involved."

If the mischief is that of the *police* in obtaining the illegal evidence and if that has already occurred, there is no longer any deterrent effect in its exclusion from evidence when the rules have changed. The sanction, if applied retrospectively to old fruits of the police action, would not deter what has already been done. Thus, though *Linkletter* involved a situation where *both* the illegal seizure and its use at trial *pre-dated* Mapp v. Ohio, its thrust related to the seizure rather than the trial.

If, to be sure, the exclusionary rule dealt with guilt or innocence, or even truth in more abstract form, it might well be recognized that the defendant has been as much hurt by past misconduct of the police as another will be from such future misconduct. But that is not the reason for the refusal to make

the new rule retroactive. Depriving the constable of the rewards of his illegal conduct is the reason for the exclusionary rule. "The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim." United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, at p. 619, 38 L.Ed.2d 561 (1974). It has nothing to do with the rights of the defendant, save in the case of a constitutional violation of a protected right. Even here *Linkletter* explains Mapp v. Ohio to permit the earlier conviction to stand.

We are dealing here with what is a state rule of evidence. *Lee* was not a constitutional decision but a statutory decision based on Section 605. The Court implied its policy rule from the statute. It was a rule of exclusion to govern at trial.

■ In the instant case New York has not adopted a new rule of evidence to thwart federal policy. It is the federal policy that has changed. By the time of trial, the time when the exclusionary rule is asserted, the federal law has changed so that the admission of the evidence in the state trial is no longer offensive to existing federal *statutory* policy. The legislation then in force should govern. If it is in harmony with the state rule of evidence there is no reason why the state rule announced by its highest court should be set at naught by a lower federal court. There is no issue of the supremacy of federal law.

### III

■ The only other attack on the order of Justice Gellinoff is on the ground that the "effective date" of the order was not inserted by the judge. United States v. Lamonge, 458 F.2d 197 (6 Cir. 1972), is cited in support. But there the order was *undated.* Here the order bore the date of its issuance and it will be presumed to mark the beginning of the period prescribed. The state court has interpreted its own statute and held the order valid.

The petition for a writ of habeas corpus is dismissed.