# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### SEPTEMBER 1998 SESSION

FILED

November 23, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | NO. 02C01-9708-CC-00327 |
| Appellee, | ) | |
| | ) | HARDIN COUNTY |
| VS. | ) | |
| | ) | HON. C. CREED McGINLEY, |
| | ) | JUDGE |
| LLOYD E. FERRELL and | ) | |
| DEBRA L. FERRELL, | ) | |
| | ) | |
| Appellants. | ) | (Felony Murder) |

**FOR THE APPELLANT
LLOYD E. FERRELL:**

**VERN CHUMNEY (At Trial)**
RFD 1, Box #374
Holladay, TN 38341

**GUY T. WILKINSON (On Appeal)**
District Public Defender

**VICKI S. SNYDER (On Appeal)**
Assistant District Public Defender
117 North Forrest Avenue
Camden, TN 38320

**FOR THE APPELLANT
DEBRA L. FERRELL:**

**JAMES BROCKMAN (At Trial)**
P. O. Box 25
Parsons, TN 38363

**ROBERT C. BROOKS (On Appeal)**
707 Adams Avenue
Memphis, TN 38105

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**MARVIN E. CLEMENTS, JR.**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**G. ROBERT RADFORD**
District Attorney General

**JOHN W. OVERTON**
Assistant District Attorney General
P. O. Box 484
Savannah, TN 38372 - 0484

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,
JUDGE**

# O P I N I O N

The defendants, Lloyd E. Ferrell and Debra L. Ferrell, were convicted by a Hardin County jury of the offense of felony murder. Both were sentenced to life imprisonment. They present the following common issues in this appeal:

1. whether the evidence was sufficient to support the guilty verdict;

2. whether the trial court erred in admitting taped conversations between Debra Ferrell and a third party;

3. whether the trial court erred in refusing to grant a severance of the defendants;

4. whether the trial court erred in disallowing into evidence certain taped conversations by each defendant;

5. whether the prosecuting attorney engaged in improper closing argument; and

6. whether the trial court erred in dismissing a juror during trial.

In addition, Debra Ferrell presents two other issues for our review; namely, (1) whether trial counsel was ineffective for failing to pursue a motion to suppress the taped conversations, and (2) whether the trial court erred in denying a new trial on the basis of newly discovered evidence. After a careful review of the record and applicable law, we conclude the judgments should be AFFIRMED as to both defendants.

## FACTS

The defendants were married. Prior to March 27, 1996, co-defendant Jason Kimberland[1] and his girlfriend, Stacye Shands, went to the Ferrells' residence. Lloyd Ferrell asked Kimberland if he wanted to make some easy money by robbing an elderly couple. Lloyd suggested the amount in the residence of the elderly

_____

[1]Jason Kimberland was tried separately. His felony murder conviction and sentence of life imprisonment were recently affirmed by this Court. State v. Jason W. Kimberland, C.C.A. No. 02C01-9711-CC-00447, Hardin County (Tenn. Crim. App. filed July 10, 1998, at Jackson).

2

couple was between $40,000 and $150,000. Although Shands and Debra Ferrell were conversing in another room at the time, Shands overheard some portion of the conversation. While driving home, Shands asked Kimberland about the conversation. Upon being informed about the nature of the conversation, Shands discouraged Kimberland from any participation.

Subsequently, Kimberland decided to participate in the scheme. He met with Lloyd Ferrell and was advised that the elderly couple was related to Lloyd. Lloyd drove Kimberland by the elderly couple's residence and advised where he would let Kimberland out of the vehicle and where he would pick him up. Lloyd advised Kimberland that he should kick in the back door, tape up the couple and make them tell where the money was located. Lloyd agreed to provide an unregistered .380 pistol for Kimberland's use. They decided the robbery would take place early the next morning.

The next morning, March 27, 1996, Lloyd called Kimberland at approximately 4:30 a.m. advising that he was on his way to get him. Shortly thereafter, Kimberland called back to advise Lloyd that he had found his ski mask and would not need one to be provided by Lloyd. Debra Ferrell answered the phone and stated, "He's already gone and is bringing a ski mask and gun."

Lloyd then arrived in his green Buick LeSabre and picked up Kimberland. Two residents of the Ferrell's apartment complex recognized Kimberland talking to a man in a dark-colored Buick in the parking lot.

Kimberland left with Lloyd, and Lloyd gave him the gun. They stopped at a store to buy cigarettes, and Kimberland spoke briefly to a friend. The friend identified Lloyd as the driver of the vehicle, a Buick automobile, in which Kimberland was riding.

Lloyd then drove near the elderly couple's residence where Kimberland exited the car. Kimberland went to the residence. Armed with the gun he had loaded with ammunition supplied by Lloyd, Kimberland pushed open the couple's door and entered the residence of Hobert and Mary Ferrell. Mary Ferrell had earlier seen Kimberland outside the residence and supplied her husband with a shotgun.

3

Upon being confronted by Hobert Ferrell holding a shotgun, Kimberland began running and shooting back toward Hobert Ferrell. Hobert Ferrell was killed by this gunfire.

Kimberland fled and was ultimately captured some distance from the residence. He was still wearing the ski mask. A subsequent search of the area yielded the .380 pistol. Kimberland later confessed to his role in the attempted aggravated robbery and homicide and implicated Lloyd Ferrell. At trial Kimberland testified for the state.

Shortly after the murder, the victim's personal attorney came to the residence. His widow turned over to him for safe keeping over $61,000 in cash that was in the residence.

At approximately 8:30 a.m. on the morning of the murder, Debra Ferrell called Stacye Shands and advised her that something was wrong and, "They've got Jason, or they've got somebody." Debra advised her that if any investigators came to speak with her, she should tell them she knew nothing. Shortly thereafter, an investigator spoke with Shands. Shands agreed to tape record any calls made to her by the Ferrells.

Shands recorded subsequent calls made by Debra Ferrell on that same date. Debra insisted numerous times that Shands tell the authorities she knew nothing; otherwise, "Everybody can be charged...if you say you know anything."

In one of the conversations Shands and Debra Ferrell discussed whether the elderly couple had a phone. Debra stated:

> No, no, no. That's all wrong. Lloyd told him right the opposite. He told 'em they did have one, and they do have a phone 'cause we looked it up in the book to make sure. I knew they had a phone, and we knew they had a pistol...

The defense presented four witnesses. The first was J. W. Kimberland, the father of Jason Kimberland. He testified he had been with his son the day before the shooting, and his son did not appear to be under the influence of any kind of intoxicant.

4

Brenda Smith then testified that she provided information to authorities about a .380 pistol her husband had once owned; however, she did not contend that this pistol was the gun used in the shooting.

Ron Harmon, counsel for Jason Kimberland, testified. He stated Kimberland did not receive or ask for any special consideration for testifying at the trial.

Dr. L. D. Hutt, a clinical psychologist, testified concerning his evaluation of Debra Ferrell. Dr. Hutt testified Debra Ferrell had an "histrionic personality." A person with this type personality would tend to exaggerate.

Neither defendant testified.

The jury convicted each defendant of felony murder based upon their criminal responsibility for the felony murder committed by Jason Kimberland.

**SUFFICIENCY OF THE EVIDENCE**

Both defendants contend the evidence is insufficient to support the finding of guilt. In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. Id. This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 317,

5

99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

Although the evidence of guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993); State v. Buttrey, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). However, in order for this to occur, the circumstantial evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with innocence and must exclude every other reasonable theory or hypothesis except that of guilt. Tharpe, 726 S.W.2d at 900. In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime." Tharpe, 726 S.W.2d at 900 (quoting Pruitt v. State, 460 S.W.2d 385, 391 (Tenn. Crim. App. 1970).

Kimberland was unquestionably an accomplice in this criminal endeavor, and the jury was so instructed. In Tennessee, a conviction may not be based solely upon the uncorroborated testimony of an accomplice. State v. Maddox, 957 S.W.2d 547, 554 (Tenn Crim. App. 1997). The issue of whether an accomplice's testimony has been sufficiently corroborated becomes a matter entrusted to the jury, as the trier of fact. Bigbee, 885 S.W.2d at 803.

## A. Criminal Responsibility for Felony Murder

The state contends each defendant is criminally responsible for the conduct of Kimberland who murdered the victim in perpetration of the attempted aggravated robbery. The state must prove beyond a reasonable doubt that a defendant acted with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense; and the defendant solicited, directed, aided, or attempted to aid another person to commit the offense. Tenn. Code Ann. § 39-11-402(2). The state must also prove beyond a reasonable doubt that Kimberland

6

unlawfully killed the victim in the attempt to perpetrate the robbery. Tenn. Code Ann. § 39-13-202(a)(2).

It was clearly established that Kimberland committed the offense of felony murder by unlawfully taking the life of the victim in the perpetration of the attempted robbery. Thus, the crucial issue is whether the evidence is sufficient to show that each defendant met the criteria for criminal responsibility for the felony murder committed by Kimberland. If so, each defendant is criminally responsible for the felony murder as the natural and probable consequence of the intended aggravated robbery. State v. Carson, 950 S.W.2d 951, 956 (Tenn. 1997).

## B. Lloyd Ferrell - Sufficency of the Evidence

Looking at the evidence in a light most favorable to the state, Lloyd Ferrell solicited Kimberland to commit the robbery. On the morning of the attempted robbery, he furnished a gun to Kimberland. Lloyd drove the vehicle and let Kimberland out near the residence of the elderly couple. Kimberland was seen by witnesses getting into Lloyd's car. Lloyd was personally identified as the driver of the car.

Furthermore, the testimony of Kimberland was sufficiently corroborated. Lloyd was identified by an independent witness as being the driver of the car just prior to the homicide. Independent witnesses saw Kimberland in that car just prior to the homicide. Lloyd's automobile was also identified by independent witnesses. The testimony of Kimberland was sufficiently corroborated.

In a light most favorable to the state, a rational trier of fact could find that Lloyd Ferrell acted with the intent to promote and assist in the commission of the offense; intended to benefit in the proceeds of the robbery; and both solicited and aided Kimberland in the commission of the offense. *See* Tenn. Code Ann. § 39-11-402(2). Thus, the evidence is sufficient to support the verdict of guilt as to Lloyd Ferrell.

7

## C. Debra Ferrell - Sufficiency of the Evidence

The issue of Debra Ferrell's criminal responsibility for felony murder is much more difficult. However, in a light most favorable to the state, we conclude the evidence is also sufficient to establish that Debra Ferrell acted with the intent to promote or assist in the commission of the offense and that she aided in its commission.

In a light most favorable to the state, the following involvement of Debra Ferrell was established by the evidence:

(1)     Prior to the murder, she was aware of the criminal scheme and had looked in a phone book to see if the elderly couple had a phone. She knew her husband was also aware of this information.

(2)     During the early morning hours of March 27, 1996, she was aware that Jason Kimberland, with assistance from Lloyd Ferrell, intended to commit an aggravated robbery at the residence of Hobert and Mary Ferrell.

(3)     She knew her husband arose early on the morning of the murder and left their residence with a gun and ski mask to be used in the intended aggravated robbery.

(4)     Upon being called by Kimberland on the morning of and just prior to the murder, she advised him that Lloyd was on his way to get Kimberland and that Lloyd was bringing a ski mask and gun.

(5)     Her conversations with Stacye Shands after the robbery indicate Debra Ferrell urged Shands not to reveal information to the authorities.

Debra Ferrell contends the evidence proves only her knowledge of the intended robbery prior to its failed attempt. Mere knowledge that another intends to commit a crime would not establish her criminal liability. *See* 22 C.J.S. *Criminal Law* § 139 (1989). Furthermore, the mere fact that one, after the actual commission of the principal crime by the perpetrator, urges another not to cooperate does not establish criminal liability for the same offense as committed by the principal offender.

However, the evidence reveals that Debra Ferrell not only had knowledge of the intended aggravated robbery, but also committed acts to promote its commission. More specifically, she determined by looking in a telephone book that

8

the intended victims had a telephone. Furthermore, she provided information to Kimberland on the morning of the crime that her accomplice-husband was on his way to get him and had a gun and ski mask. Thus, she acted with the intent to promote the aggravated robbery; it could reasonably be inferred that she intended to share in the robbery proceeds with her husband; and she aided the principal perpetrator by providing him with material information. The elements of criminal responsibility for felony murder are, therefore, established. *See* Tenn. Code Ann. § 39-11-402(2).

Certainly, her actual involvement was much less than her co-defendants. Yet, it was for the jury to determine whether these acts were sufficient to justify her criminal responsibility for felony murder. The jury had sufficient evidence before it to justify the guilty finding.

This issue is without merit.


## TAPED CONVERSATIONS OF DEBRA FERRELL


Both defendants contend the trial court erred in admitting the taped conversations between Debra Ferrell and Stacye Shands shortly after the homicide. Lloyd Ferrell contends the taped conversations violate his right to confrontation. Debra Ferrell contends there is no showing that Stacye Shands consented to the taping of the conversations. We find the arguments of both defendants to be without merit.


### A. Lloyd Ferrell - Taped Conversations


The defendant, Lloyd Ferrell, contends the admission of his wife's taped conversations with Stacye Shands was in violation of <u>Bruton v. United States</u>, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The Court held in <u>Bruton</u> that the admission of a confession of a non-testifying co-defendant implicating the defendant was inadmissible since the defendant was deprived of the right of

9

confrontation. 391 U.S. at 126. The taped conversations of Debra Ferrell do not constitute a confession to a law enforcement officer; nevertheless, the admission of statements by Debra Ferrell implicating Lloyd Ferrell might still be in violation of the right of confrontation since Debra Ferrell did not testify at trial. Furthermore, the statements raise potential hearsay issues.

Statements made by Debra Ferrell implicating Lloyd Ferrell are not admissible unless the statements fall within an exception to the hearsay rule and right of confrontation.

Our review of the lengthy taped conversations reveals very few instances in which Lloyd Ferrell is implicated. However, the tapes did contain the following statements of Debra Ferrell: Lloyd wanted me to call; Lloyd is worried and trying to get Kimberland out of jail; Lloyd told Kimberland the elderly couple had a gun and phone; Lloyd did not know there were two other people involved;[2] and Kimberland told Lloyd he intended to just get the money and leave.

The state contends the statements of Debra Ferrell qualify under the co-conspirator exception to the hearsay rule. *See* Tenn. R. Evid. 803(1.2)(E). Evidence within this hearsay exception is firmly rooted and is not barred by the Confrontation Clause. Bourjaily v. United States, 483 U.S. 171, 183, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987); State v. Alley, 968 S.W.2d 314, 317 (Tenn. Crim. App. 1997).

Tenn. R. Evid. 803(1.2)(E) provides that "a statement by a co-conspirator of a party during the course of and in furtherance of the conspiracy" is not excluded by the hearsay rule. Thus, this Court must determine whether the statements made by Debra Ferrell implicating Lloyd Ferrell were made "during the course of and in furtherance of the conspiracy."

This issue is controlled by State v. Walker, 910 S.W.2d 381 (Tenn. 1995). The Walker court held that a conspiracy terminates with the consummation of the robbery; therefore, statements made after the robbery relating to the circumstances of the robbery are inadmissible. 910 S.W.2d at 386. However, Walker recognized

---

[2]This theory was not established at trial.

10

that a conspiracy might also exist to conceal the circumstances of the original crime, thus creating a later conspiracy which might give rise to the hearsay exception. Id.; *see also* N. Cohen, D. Paine & Sheppeard, Tennessee Law of Evidence, § 803(1.2) .6 (Supp. 1997). We further note that under the statute a conspiracy terminates when its "objectives" are completed, and the "objectives" include "measures, other than silence, for concealing the crime or obstructing justice in relation to it." Tenn. Code Ann. § 39-12-103(e)(1).

The only statements made by Debra Ferrell implicating Lloyd Ferrell that related to the circumstances of the crime were the following: (1) Lloyd told Kimberland the elderly couple had a gun and phone; (2) Lloyd did not know there were two other people involved; and (3) Kimberland told Lloyd just before the crime that he was only going to get the property and leave. These statements were inadmissible. Nevertheless, in light of the overwhelming evidence against Lloyd Ferrell, we conclude the limited references in the taped conversations to the circumstances of the original crime constituted harmless error. Tenn. R. App. P. 36(b).

### B. Debra Ferrell - Taped Conversations

Debra Ferrell insists there is no evidence that Stacye Shands consented to the tape recording of the conversations. She insists the evidence is inadmissible under federal law without consent of one of the parties. *See* 18 U.S.C. §§ 2511(2)(c), 2518(10)(a); State v. Crawford, 783 S.W.2d 573 (Tenn. Crim. App. 1989). Contrary to her assertions, the record is abundantly clear that Shands specifically agreed to tape record the conversations. *See* State v. Carey Dean, C.C.A. No. 02C01-9110-CC-00226 Madison County (Tenn. Crim. App. filed May 27, 1992, at Jackson).

This issue is without merit.

11

**MOTION FOR SEVERANCE**

Both parties contend the trial court erred in denying their motions for severance. The trial court did sever the co-defendant, Jason Kimberland, for a separate trial. A motion to sever is discretionary with the trial court, and the court's decision will not be reversed unless it clearly prejudiced a defendant. State v. Hutchison, 898 S.W.2d 161, 166 (Tenn. 1994).

**A. Lloyd Ferrell - Severance**

Lloyd Ferrell contends his trial should have been severed from that of his wife's since her taped conversations implicating him were introduced at trial, and she was not subject to cross-examination. Tenn. R. Crim. P. 14(c) sets forth the criteria for severance of defendants. Where a co-defendant has made a pretrial statement implicating the defendant which is inadmissible against the defendant, the court must either (a) not admit the statement at a joint trial; (b) make appropriate redactions to all references to the moving defendant; or (c) grant the severance as to the moving defendant. Tenn. R. Crim. P. 14(c)(1). Having earlier concluded that those portions of the taped conversations implicating the defendant in the circumstances of the offense should not have been introduced, we must also conclude the trial court erred by not following one of the three procedures in Tenn. R. Crim. P. 14(c)(1) as set out above. Nevertheless, as with the error in regard to the erroneous admission of certain portions of the taped conversations, we likewise find this error to be harmless. Tenn. R. App. P. 36(b).

**B. Debra Ferrell - Severance**

Debra Ferrell contends the trial court should have severed her trial from that of her husband's. Since Lloyd Ferrell made no pretrial statements implicating her, Tenn. R. Crim. P. 14(c)(1) is inapplicable. Nevertheless, Tenn. R. Crim. P. 14(c)(2)

provides that a severance shall be granted before or during trial, if it is deemed appropriate to promote a fair determination of guilt or innocence. We are unable to conclude that a severance was necessary for a fair determination of Debra Ferrell's guilt or innocence. The trial court did not abuse its discretion in refusing to grant Debra Ferrell a severance.

## FAILURE TO ADMIT CERTAIN TAPED CONVERSATIONS

Lloyd Ferrell contends the trial court erred in refusing to admit a taped conversation that he had with Kimberland's father. He contends this tape is exculpatory. Debra Ferrell contends the trial court erred in refusing to admit into evidence certain taped conversations she had with Stacye Shands. She contends fairness dictates their admission since other taped conversations were introduced by the state.

### A. Lloyd Ferrell - Failure to Admit Tape

The conversation sought to be introduced by Lloyd Ferrell consisted of a taped conversation that he had with Kimberland's father. In that conversation Lloyd Ferrell denied any criminal involvement.

This conversation was hearsay since it was being offered for the truth of the matter asserted; to-wit, that Lloyd Ferrell did not commit any criminal impropriety. *See* Tenn. R. Evid. 801(c). Such prior self-serving statements are not admissible. State v. Turnmire, 762 S.W.2d 893, 897 (Tenn. Crim. App. 1988).

### B. Debra Ferrell - Failure to Admit Tapes

Debra Ferrell contends the trial court erred in refusing to allow into evidence her taped conversations recorded on the day following the murder. Since prior recordings were introduced, she contends these recordings should have been

13

introduced pursuant to Tenn. R. Evid. 106.  Tenn. R. Evid. 106 provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

In the taped conversations at issue, Debra Ferrell spoke at length with Stacye Shands primarily about the need for Kimberland to retain counsel.  They were not as inculpatory as the prior conversations admitted into evidence.

At trial defense counsel did not seek admission of these tapes pursuant to Tenn. R. Evid. 106.  Defendant may not now take a different position on appeal. *See generally*, State v. Brewer, 932 S.W.2d 1, 9 (Tenn. Crim. App. 1996). Furthermore, our review of the rambling tapes does not reveal that they "ought in fairness to be considered contemporaneously with" the other taped conversations. Our review of the questioned tapes does not reveal that their admission would have benefited Debra Ferrell.  Even if the trial court erred in failing to admit these tapes, such error was harmless at most.  Tenn. R. App. P. 36(b).

This issue is without merit.

## IMPROPER CLOSING ARGUMENT

Both defendants contend the prosecuting attorney made improper and inflammatory remarks in closing argument by stating the defendants were like a "cancer" that needed to be removed and suggesting the defendants intended to murder Stacye Shands.  Debra Ferrell also contends the prosecuting attorney went outside the record when he argued Debra Ferrell was "the brains behind the outfit."

No objection was voiced to any of these statements during final argument. This issue is waived.  Tenn. R. App. P. 36(a); State v. Gregory, 862 S.W.2d 574, 578 (Tenn. Crim. App. 1993).  Even if the issue were not waived, we would not find reversible error resulting from these arguments.

14

**DISMISSAL OF JUROR**

Both defendants contend the trial court erred in the dismissal of a juror during trial. We respectfully disagree.

After the completion of the evidence but prior to the jury charge, the trial court had a conversation with a juror in chambers in the presence of the court reporter, but outside the presence of counsel. The juror informed the trial judge that he had realized that he had close friends who were also friends of the defendant's son. The trial judge then brought in the attorneys, and the juror explained the relationship that made him feel uncomfortable about continuing to serve as a juror. Both counsel were given an opportunity to question the juror but declined. Upon the juror again indicating that this relationship would interfere with his ability to reach a decision, the trial judge discharged the juror and replaced him with an alternate.

Generally, a trial judge should have no *ex parte* conversations with members of the jury. *See* Spencer v. A-1 Crain Service, Inc., 880 S.W.2d 938, 941 (Tenn. 1994); State v. Tune, 872 S.W.2d 922, 928 (Tenn. Crim. App. 1993). However, we do not find reversible error under the circumstances. The *ex parte* conversation was on the record,[3] and counsel was immediately brought into the conference. Counsel was given an opportunity to question the juror. Thus, we find no prejudice to the defendants.

Furthermore, the trial judge discharged the juror upon a showing that this social relationship would interfere with his ability to reach a verdict. The discharge of a juror and substitution of an alternate juror is left to the sound discretion of the trial judge. State v. Cleveland, 959 S.W.2d 548, 551 (Tenn. 1997); State v. Millbrooks, 819 S.W.2d 441, 445 (Tenn. Crim. App. 1991). The trial judge did not abuse his discretion in discharging the juror.

---

[3]The presence of the court reporter allows for the preservation of the record but does not alleviate the problem relating to the right of the parties or counsel to be present.

15

## INEFFECTIVE ASSISTANCE OF COUNSEL

Debra Ferrell contends trial counsel was ineffective by failing to pursue a motion to suppress the taped conversations. She obviously has different counsel on appeal. This issue was not raised in the motion for new trial, and we find no plain error. We also note this issue could not have been raised in the motion for new trial since defendant was represented at that time by the same trial counsel.

This issue is waived. *See* Tenn. R. App. P. 3(e).

## NEWLY DISCOVERED EVIDENCE

Finally, Debra Ferrell contends newly discovered evidence entitles her to a new trial. Specifically, she contends her post-trial discovery of Kimberland's alleged use of drugs at the time of the incident and his low mental capability entitles her to a new trial. She concedes the record does not include the appropriate documents supporting her argument.

The granting or refusal of a new trial on the basis of newly discovered evidence rests within the sound discretion of the trial court. State v. Walker, 910 S.W.2d at 395. The trial court must determine whether the result of trial would likely be changed with the newly discovered evidence. State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994). On the basis of the scant record before us, we are unable to conclude that the trial court abused its discretion in denying the motion.

This issue is without merit.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court is AFFIRMED as to both defendants.

16

_____
**JOE G. RILEY, JUDGE**


**CONCURS:**


_____
**PAUL G. SUMMERS, JUDGE**


_____
**DAVID H. WELLES, JUDGE**

17