FILED
06/22/2021
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 12, 2021 Session

## STATE OF TENNESSEE v. JULIA HURLEY, LOUDON COUNTY COMMISSIONER FOR THE 2ND JUDICIAL DISTRICT

Appeal from the Chancery Court for Loudon County
No. 12751    Frank V. Williams, III, Chancellor

_____

### No. E2020-01674-COA-R10-CV

_____

We granted this extraordinary appeal to determine whether the trial court erred in denying the defendant's motion to dismiss for lack of subject matter jurisdiction. Because the trial court considered the proper statute, the relevant facts, and the arguments advanced by the parties, we conclude that the application for an extraordinary appeal was improvidently granted. We therefore dismiss this appeal.

**Tenn. R. App. P. 10 Extraordinary Appeal; Appeal Dismissed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and CARMA DENNIS MCGEE, JJ., joined.

T. Scott Jones and Gena Lewis, Knoxville, Tennessee, for the appellant, Julia Hurley.

Russell Johnson, District Attorney General, and Jason S. Collver, Assistant Attorney General, for the appellee, State of Tennessee - Civil.

## OPINION

### I. PROCEDURAL HISTORY

On March 26, 2020, the State of Tennessee ("Appellee"), on relation of the District Attorney General for the Ninth Judicial District of Tennessee, filed a petition of quo warranto in the Chancery Court for Loudon County (the "trial court") against Defendant/Appellant Julia C. Hurley, as Loudon County Commissioner for the 2nd Commission District ("Appellant"), on information of Henry Cullen, a Loudon County Commissioner. The petition alleged that Appellant was unlawfully holding office because

she had moved out of her district. Following the prayer for relief was the following statement: "I, Henry Cullen, a citizen of Loudon County agree as Surety, to be held and firmly bound unto the Chancery Court Clerk of Loudon County, Tennessee for the payment of all costs awarded against the Petitioner." Mr. Cullen signed under a line designated "Surety."

On April 20, 2020, Appellant filed a motion to dismiss the complaint, arguing that Appellee failed to comply with Tennessee Code Annotated section 29-35-110, which provides as follows:

> (a) The suit is also brought on the information of any person, upon such person giving security for the costs of the proceedings, to be approved by the clerk of the court in which the bill is filed.
> (b) When the suit is brought at the relation of a private individual, it shall be so stated in the bill and proceedings, and such individual is responsible for costs in case they are not adjudged against the defendant.

Appellant asserted that Mr. Cullen failed to comply with the statute because he did not submit a proper surety bond, which necessitates the involvement of a third-party, citing ***Bernatsky v. Designer Baths & Kitchens, LLC***, No. W2012-00803-COA-R3-CV, 2013 WL 593911, at *1 (Tenn. Ct. App. Feb. 15, 2013), *overruled on other grounds by **Griffin v. Campbell Clinic, P.A.***, 439 S.W.3d 899, 904 (Tenn. 2014) ("The surety bond . . . involves a third party: the surety." (citing ***State v. Thammavong***, No. 97,278, 2008 WL 762507, *1 (Kan. Ct. App. Mar. 21, 2008)).[1] And because the bond is mandatory and jurisdictional under the precedent set in ***Johnson v. Hopkins***, 432 S.W.3d 840 (Tenn. 2013), Appellant argued that the suit was not validly commenced and should be dismissed.

On May 29, 2020, Appellee filed a response arguing that Mr. Cullen's signature was sufficient to comply with the statute, which did not expressly require the use of a bond to secure the judgment. Moreover, Appellee submitted that any failure to comply with the statute could be cured by amending the complaint to add additional security under Tennessee Code Annotated section 20-12-124, which provides as follows:

> Any person required by law to give security for costs may, at any stage of the cause, be ruled to give such security, if it has not previously been done, or to justify or give new or additional security on sufficient cause shown.

Finally, Appellee argued that because both ***Bernatsky*** and ***Johnson*** involved appellate bonds, "there is no basis within the case[s] . . . to support [Appellant's] assertion that

---

[1] ***Thammavong*** is unpublished. Under Kansas Supreme Court Rule 7.04(f) unpublished opinions are not binding precedent and are "not favored for citation" except in limited circumstances set forth in the rule. Kan. Sup. Ct. R. 7.04(f).

security for costs is a prerequisite to filing a lawsuit." *See* **Johnson**, 432 S.W.3d at 848–49 (citing Tenn. Code Ann. § 29-18-130) (involving the "bond, with good and sufficient security" that must be posted by a tenant who appeals from a landlord-tenant action); **Bernatsky**, 2013 WL 593911, at *1 (citing Tenn. Code Ann. § 27-5-103) (involving the "bond with good security" required to appeal a general sessions court judgment to circuit court).

A hearing on the motion to dismiss occurred on July 23, 2020. The trial court eventually entered a written order denying the motion to dismiss on October 21, 2020. Therein, the trial court ruled that Appellant's motion to dismiss "was appropriate insomuch as the manner in which the petition was filed," but further ruled that "the [c]ourt is going to allow [Appellee] to provide such sufficient surety as deemed necessary by the Clerk and Master to satisfy the requirements therein rather than require a dismissal of the suit in question."

On November 4, 2020, Appellant filed a motion in the trial court for leave to file an interlocutory appeal of the trial court's denial of her motion to dismiss.[2] Therein, Appellant cited the need to develop a uniform body of law and the need to prevent needless litigation as the bases for her request. Appellee responded in opposition to the motion on December 1, 2020. The trial court denied Appellant's motion without explanation by order of December 17, 2020.

On December 15, 2020, Appellant filed an application for extraordinary appeal of the trial court's order denying Appellant's motion to dismiss in this Court, under Rule 10 of the Tennessee Rules of Appellate Procedure. This Court granted the appeal on February 3, 2021, limited to the following issue: "Whether the Trial Court erred in denying the motion to dismiss and allowing Appellee 'to provide such sufficient surety as deemed necessary by the Clerk and Master to satisfy the requirements' of Tennessee Code Annotated section 29-35-110."

## II. ANALYSIS

Because the trial court declined to dismiss this action, this appeal comes to us from a non-final judgment. Under the Tennessee Rules of Appellant Procedure, appeals from non-final judgments may be had by permission under either Rule 9 or 10. Under Rule 9, an aggrieved party must timely seek permission from both the trial court and the appellate court in order to prosecute such an appeal. *See generally* Tenn. R. App. P. 9. A Rule 9 appeal is appropriate when one or more of the following non-exclusive circumstances is present:

---

[2] The motion also sought to appeal the trial court's ruling that District Attorney General Russell Johnson did not have a conflict of interest that precluded him from representing Appellee, but that is not at issue in this appeal.

(1) the need to prevent irreparable injury, giving consideration to the severity of the potential injury, the probability of its occurrence, and the probability that review upon entry of final judgment will be ineffective; (2) the need to prevent needless, expensive, and protracted litigation, giving consideration to whether the challenged order would be a basis for reversal upon entry of a final judgment, the probability of reversal, and whether an interlocutory appeal will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed; and (3) the need to develop a uniform body of law, giving consideration to the existence of inconsistent orders of other courts and whether the question presented by the challenged order will not otherwise be reviewable upon entry of final judgment.

Tenn. R. App. P. 9(a).

A Rule 10 extraordinary appeal, however, requires only the consent of the appellate court, rather than approval of the trial court. But the circumstances in which a Rule 10 may be granted are far more circumscribed. As the Tennessee Supreme court explained, "[e]xtraordinary appeals are only appropriate '(1) if the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review, or (2) if necessary for complete determination of the action on appeal as otherwise provided in [the Rules of Appellate Procedure].'" *Gilbert v. Wessels*, 458 S.W.3d 895, 898 (Tenn. 2014) (quoting Tenn. R. App. P. 10(a)). According to the Advisory Commission Comment to Rule 10, "[t]he circumstances in which review is available . . . are very narrowly circumscribed to those situations in which the trial court or the intermediate appellate court has acted in an arbitrary fashion, or as may be necessary to permit complete appellate review on a later appeal." In other words, "[a]n appellate court should grant a Rule 10 extraordinary appeal only when the challenged ruling represents a fundamental illegality, fails to proceed according to the essential requirements of the law, is tantamount to the denial of a party's day in court, is without legal authority, is a plain and palpable abuse of discretion, or results in either party losing a right or interest that may never be recaptured." *Id.* (citing *State v. McKim*, 215 S.W.3d 781, 791 (Tenn. 2007) (noting that these are the same considerations applicable to the common law writ of certiorari)). Thus, compared to a Rule 10, a Rule 9 application may be granted "under far less egregious circumstances." *Id.* Indeed, appeals under Rule 10 "are reserved only for *extraordinary* departures from the accepted and usual course of judicial proceedings." *Id.* (citing *Jones v. Vasu*, 326 S.W.3d 577, 578 (Tenn. Ct. App. 2010)).

On this basis, the Tennessee Supreme Court has directed us to use caution in granting appeals under Rule 10:

It is important for appellate courts to exercise restraint in granting Rule 10 appeals. Under our Rules, the appellate courts have no

authority to unilaterally interrupt a trial court's orderly disposition of a case unless the alleged error rises to the level contemplated by the high standards of Rule 10. We note that parties who are unsuccessful in obtaining the trial court's permission for a Rule 9 appeal sometimes respond by petitioning the appellate court for permission to appeal under Rule 10. However, unless the trial court's alleged error qualifies for immediate review under the specific criteria indicated by Rule 10, the appellate court must respect the trial court's discretionary decision not to grant permission to appeal under Rule 9 and refrain from granting a Rule 10 appeal. Those alleged errors not rising to the level required by Rule 10 can be reviewed in the normal course of an appeal after a final judgment has been entered.

*Id.* at 898–99.

In *Gilbert*, our supreme court concluded that we had not properly exercised the discretion afforded us under Rule 10:

In this case, there was no extraordinary departure from the accepted and usual course of judicial proceedings; the trial court adhered to established legal standards. Trial courts have discretionary authority to determine whether the contiguous state limitation should be waived. *See Sutphin v. Platt*, 720 S.W.2d 455, 458 (Tenn. 1986) (noting that Tennessee Code Annotated section 29-26-115(b) vests the trial judge with the authority to waive the contiguous state limitation). Moreover, "questions regarding the admissibility, qualifications, relevancy[,] and competency of expert testimony are left to the discretion of the trial court." *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997) (citing *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993)). Discretionary evidentiary rulings, regardless of their merit, rarely constitute the types of extraordinary departures from the usual and accepted course of judicial proceedings that Rule 10 contemplates.

The record in this case establishes that the trial court considered the proper statute, the relevant facts, and the arguments advanced by the parties. As such, the trial court did not so far depart from the accepted and usual course of judicial proceedings as to require immediate review, nor was an extraordinary review necessary for a complete determination of the action on appeal. If the trial court did err, [the plaintiff] may raise the issue in an appeal as of right after a final judgment is entered.

*Gilbert*, 458 S.W.3d at 899. Since the *Gilbert* decision, this Court has at least once determined that a Rule 10 application was improvidently granted. *See Kaur v. Singh*, No. W2016-02058-COA-R10-CV, 2017 WL 445149, at *7 (Tenn. Ct. App. Feb. 2, 2017) (citing *Gilbert*, 458 S.W.3d at 898–99) (determining that the application was

- 5 -

"improvidently granted" because the trial court "considered the proper statute, the relevant facts, and the arguments advanced by the parties").

Although the situation is less clear here, we likewise conclude that Appellant's Rule 10 application was improvidently granted in this case. Appellant frames the question in this case as an issue of first impression. Because Rule 9 appeals are expressly authorized when necessary to create a uniform body of law, *see* Tenn. R. App. P. 9(a), Tennessee courts often grant Rule 9 applications on issues of first impression.[3] *See, e.g.*, ***Chaney v. Team Techs., Inc.***, 568 S.W.3d 576 (Tenn. 2019); ***Dialysis Clinic, Inc. v. Medley***, 567 S.W.3d 314 (Tenn. 2019); ***Young v. City of LaFollette***, 479 S.W.3d 785 (Tenn. 2015); ***Phillips v. Montgomery Cty.***, 442 S.W.3d 233, 237 (Tenn. 2014); ***State v. McCoy***, 459 S.W.3d 1, 8 (Tenn. 2014); ***Cunningham v. Williamson Cnty. Hosp. Dist.***, 405 S.W.3d 41, 42 (Tenn. 2013); ***Reid ex rel. Martiniano v. State***, 396 S.W.3d 478, 488 (Tenn. 2013); ***Garrison v. Bickford***, 377 S.W.3d 659 (Tenn. 2012); ***Lind v. Beaman Dodge, Inc.***, 356 S.W.3d 889, 894 (Tenn. 2011); ***Brown v. Tennessee Title Loans, Inc.***, 328 S.W.3d 850, 853 (Tenn. 2010); ***State v. Seale***, No. M2019-01913-CCA-R9-CD, 2020 WL 4045227, at *1 (Tenn. Crim. App. July 20, 2020); ***Burns v. State***, 601 S.W.3d 601 (Tenn. Ct. App. 2019), *perm. app. denied* (Tenn. Mar. 26, 2020); ***Phillips v. Rural Metro of Tennessee, L.P.***, No. E2016-02440-COA-R9-CV, 2017 WL 4877455 (Tenn. Ct. App. Oct. 30, 2017); ***Meyers v. First Tennessee Bank, N.A.***, 503 S.W.3d 365 (Tenn. Ct. App. 2016); ***Patterson v. Shelter Mut. Ins. Co.***, No. M2014-01675-COA-R9-CV, 2015 WL 5320231 (Tenn. Ct. App. Sept. 11, 2015); ***Hudson v. Town of Jasper***, No. M2013-00620-COA-R9-CV, 2013 WL 5762224, at *3 (Tenn. Ct. App. Oct. 22, 2013); ***Dale v. B & J Enterprises***, No. E2011-01790-COA-R9-CV, 2012 WL 1655778 (Tenn. Ct. App. May 10, 2012); ***Brooks Cotton Co. v. Williams***, 381 S.W.3d 414 (Tenn. Ct. App. 2012); ***Roberts v. McNeill***, No. W2010-01000-COA-R9-CV, 2011 WL 662648, at *7 (Tenn. Ct. App. Feb. 23, 2011).

In contrast, Tennessee appellate courts have not frequently granted applications under Rule 10 merely because the dispute involved an issue of first impression. Indeed, the majority of cases in which this situation was presented were in the criminal law context, rather than the civil. *See generally* ***Himmelfarb v. Allain***, 380 S.W.3d 35 (Tenn. 2012) (originating as an appeal under Rule 10 as to an issue of first impression); ***Holton v. State***, 201 S.W.3d 626 (Tenn. 2006), *as amended on denial of reh'g*, (June 22, 2006) (granting an extraordinary appeal that had been denied by the intermediate appellate court as to an issue of first impression); ***Patterson v. Tennessee Dep't of Lab. & Workforce Dev.***, 60 S.W.3d 60 (Tenn. 2001) (same); ***Younger v. Okbahhanes***, No. E2020-00429-COA-R10-CV, 2021 WL 289332 (Tenn. Ct. App. Jan. 28, 2021) (involving a Rule 10 concerning a "matter of first impression in Tennessee"); ***State v. Morrow***, No. 02C01-9601-CC-00022, 1996 WL 170679 (Tenn. Crim. App. Apr. 12, 1996) (allowing a Rule 10 appeal of an issue of first impression because the Rule 10 "application is the prescribed mechanism for an

---

[3] We note that the need to develop a uniform body of law was one of the bases cited in Appellant's motion for leave to file a Rule 9 application.

appeal of a trial court's decision regarding media coverage"); ***Ball v. State***, 891 S.W.2d 240 (Tenn. Crim. App. 1994) (involving a Rule 10 concerning a matter of first impression); ***State v. Crawford***, 783 S.W.2d 573 (Tenn. Crim. App. 1989) (same); ***State v. Turner***, 713 S.W.2d 327 (Tenn. Crim. App. 1986) (same); *see also* ***Culbertson v. Culbertson***, 455 S.W.3d 107 (Tenn. Ct. App. 2014) (citing ***Culbertson v. Culbertson***, 393 S.W.3d 678 (Tenn. Ct. App. 2012)) (describing a prior Rule 10 appeal as involving an issue of first impression). The fact that few Rule 10 applications have been granted on the basis of the need to decide an issue of first impression may be explained by the fact that fewer Rule 10 applications are granted, relative to Rule 9 applications. However, it could also result from the fact that a trial court likely does not so far depart from the usual and accepted course of proceedings when there is no accepted course in place yet under Tennessee law.

A somewhat more recent case illustrates this point. In ***Jones v. Windham***, this Court grappled with an issue of law that was characterized as an issue of first impression by one of the panel members. *See* ***Jones v. Windham***, No. W2015-00973-COA-R10-CV, 2016 WL 943722, at *13 (Tenn. Ct. App. Mar. 11, 2016) (Gibson, J., dissenting), *appeal granted, judgment vacated* (Tenn. Aug. 19, 2016) (hereinafter "***Jones I***") ("This case presents an issue of first impression in Tennessee."). The Tennessee Supreme Court nevertheless concluded that it was not appropriate for review under Rule 10. *See* ***Jones v. Windham***, No. W2015-00973-SC-R11-CV (Tenn. Aug. 19, 2016). Unfortunately, our supreme court chose to issue only a per curium order in ***Jones***, so the only insight into its basis for dismissing the case was that "the trial court did not so far depart from the accepted and usual course of judicial proceedings as to require immediate review and because a review is not necessary for a complete determination of the action on appeal." ***Id.*** Importantly, the ***Jones*** appeal involved only a question of law, rather than the discretionary decision that was at issue in ***Gilbert***. *See* ***Jones I***, 2016 WL 943722, at *3. Moreover, the majority opinion noted that there was a split of authority as to the dispositive issue. ***Id.*** This was apparently not sufficient, however, to justify extraordinary review. *Cf.* ***State v. Willoughby***, 594 S.W.2d 388, 392 (Tenn. 1980) (holding that while an application was "procedurally proper" due to an issue not having been "heretofore decided," it should nevertheless be "denied on its merits" because it did not meet the requirements of ***State v. Johnson***, 569 S.W.2d 808 (Tenn. 1978), *i.e.*, that the challenged ruling represents a fundamental illegality, fails to proceed according to the essential requirements of the law, is tantamount to the denial of a party's day in court, is without legal authority, is a plain and palpable abuse of discretion, or results in either party losing a right or interest that may never be recaptured).

Respectfully, we conclude that the same is true in this case. Here, the dispute concerns the proper interpretation and application of Tennessee Code Annotated section 29-35-110. In particular, the parties dispute whether Appellee properly complied with that statute's requirement to give "security for the costs of the proceedings." Appellant asserts that this requirement is mandatory and jurisdictional and that the failure to provide a bond was fatal to Appellee's action. In support, Appellant cites ***Johnson v. Hopkins***, 432 S.W.3d

840 (Tenn. 2013), which involved a statutory bond required to appeal a judgment in the landlord-tenant context.

In contrast, Appellee contends that ***Johnson*** is entirely inapplicable as it involves a different statutory scheme employing language different from section 29-35-110. The language actually at issue, Appellee submits, required only that the clerk approve the security, and another statute, Tennessee Code Annotated section 20-12-124, expressly allowed the trial court to increase the security if necessary. Thus, Appellee argues that there was no jurisdictional defect that required dismissal of its cause of action. Consequently, neither party contends that any controlling caselaw interpreting section 29-35-110 mandated a particular result in the trial court. Instead, the parties simply disagree as to how this statute should be interpreted, given caselaw and other relevant statutes.[4]

We concede that in the context of an appeal from a final judgment or even a proper Rule 9 interlocutory appeal, divining generally applicable rules from similar, but not identical, caselaw is a common requirement of this Court. But appeals from final judgments occur as of right, and therefore require no exercise of discretion as to whether this Court should interfere with the normal course of the trial court's proceeding. *See generally* Tenn. R. App. P. 3 (providing that appeals of final judgments are "as of right"). Even appeals under Rule 9 are fundamentally different, as Advisory Committee comments to Rule 10 emphasize that the burden to justify our interference is far more "narrowly circumscribed" under Rule 10 than under Rule 9. Tenn. R. App. P. 10 adv. comm. cmt.

Under the circumstances present in this case, we must conclude that the record does not reveal "an *extraordinary* departure[] from the accepted and usual course of judicial proceedings." ***Gilbert***, 458 S.W.3d at 898 (emphasis added). Like the court in ***Gilbert***, the trial court's written order denying the motion to dismiss demonstrates "that the trial court considered the proper statute, the relevant facts, and the arguments advanced by the parties." ***Id.*** at 899. Under these circumstances, our supreme court has held that no extraordinary departure occurred so as to justify an extraordinary appeal. ***Id.***; *see also* ***Kaur***, 2017 WL 445149, at *7 (applying this framework to conclude that the Rule 10 application was improvidently granted). And the ***Jones*** case makes clear that issues of first impression are not automatically entitled to review under Rule 10. As such, the situation does not rise to the high level necessary to justify interference in the trial court's orderly

---

[4] In our view, this appeal therefore involves a multitude of sometimes overlapping questions: (1) whether the requirements of section 29-35-110 are mandatory and jurisdictional; (2) whether the statement in Appellee's complaint satisfied the requirements of section 29-35-110; and (3) whether section 20-12-124 may be used to correct any deficiency. Respectfully, the trial court's order is somewhat ambiguous and does not appear to resolve many of these disputes, other than allowing the deficiency in the security provided to be corrected. In a different case, we held that an interlocutory appeal was not ripe when the trial court failed to answer the dispositive question presented. *See generally* ***Farmers Mut. of Tennessee v. Atkins***, No. E2011-01903-COA-R9-CV, 2012 WL 982998, at *5 (Tenn. Ct. App. Mar. 21, 2012).

disposition of the case. *Id.* at 898.

Of course, Appellant did not assert in her application for an extraordinary appeal that the trial court had so far departed from the usual course of proceedings as to necessitate immediate review.[5] Instead, she argued that she would "lose a right or interest that may never be recaptured." *Id.* at 898 (citing *McKim*, 215 S.W.3d at 791). Respectfully, we disagree.

The Tennessee Supreme has provided the following guidance on the use of this reason as justification for extraordinary relief;

> In entertaining and acting upon this discretionary writ,[6] in my view, a critical consideration is the existence of an effective, available and expeditious appellate remedy. The mere fact that an appeal may ultimately afford a vehicle for the presentation of the errors asserted may well be of no significance. The right or interest sought to be protected may be eroded or devitalized notwithstanding the successful pursuit of an appeal. Again, the ultimate test must be whether, absent the use of the common law writ, either party to a criminal action loses a right or forfeits an interest that can never be recaptured.

*State v. Johnson*, 569 S.W.2d 808, 815 (Tenn. 1978). In *State v. Johnson*, the Tennessee Supreme Court held that this consideration was present where the trial court granted a motion to suppress evidence against the defendant, as the trial court's ruling was "in effect a judgment of acquittal" and that "the State's only avenue of relief against a suppression order, plainly and palpably erroneous, is by the common law writ of certiorari." *Id.* at 811, 814. Because "[the] State ha[d] no other remedy," the State's interest had "been destroyed" and the writ of certiorari was proper. *Id.* at 816.

Applying this rule, we have previously held that a right could not be recaptured when a parent had no other avenue to appeal a ruling which required her to produce her mental health records despite a statutory privilege. *See In re Lucas H.*, No. W2020-00122-COA-R3-JV, 2021 WL 2137991, at *4 (Tenn. Ct. App. May 26, 2021) ("[G]iven the nature of the privilege at stake in this case, the present matter uniquely implicates a right or interest that is subject to being lost forever if not protected."). In that situation, requiring the parent

---

[5] Appellant also did not assert that review was "necessary for complete determination of the action[.]" Tenn. R. App. P. 10(a)(2). As discussed in detail, *infra*, review of the final judgment is sufficient in this case.

[6] Although *Johnson* involved a common law writ of certiorari, it is well-settled that the same considerations are applicable in determining whether to grant a Rule 10 extraordinary appeal. *See McKim*, 215 S.W.3d at 791 ("This Court has stated that a Rule 10 extraordinary appeal will lie whenever the prerequisites for common law certiorari exist[.]").

to await a final judgment to review the disclosure decision "would be of no avail" because the records would have already been disclosed. *Id.* at *5. On that basis, we held that relief pursuant to the common law writ of certiorari was proper. *Id.* at *6–7. *Cf. State v. Gallaher*, 730 S.W.2d 622 (Tenn. 1987) (holding that "[t]he ruling of the trial judge [striking a prior conviction from an indictment] resulted in the State losing a right that could never be recaptured," presumably due to double jeopardy concerns).

Here, Appellant expresses concerns that a case upon which she asserts the trial court has no subject matter jurisdiction could result in her removal from elected office. We agree that such an outcome is a possibility. But this possibility simply does not amount to the loss of an interest that may never be recaptured. As an initial matter, we note that nothing in Rule 10 automatically qualifies issues of subject matter jurisdiction as proper candidates for Rule 10 review. *See generally* Tenn. R. App. P. 10. Instead, issues of subject matter jurisdiction may be litigated at any time, including on direct appeal. *See Johnson v. Hopkins*, 432 S.W.3d at 844 ("[S]ubject matter jurisdiction is a threshold inquiry, which may be raised at any time in any court."). Moreover, regardless of how the issue reaches us, issues of subject matter jurisdiction are reviewed de novo in this Court. *See Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000) ("Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness."). As such, appeal following a final judgment does not place Appellant in any materially different position than if this issue was resolved at this juncture. Appellant has therefore not demonstrated that the alleged error by the trial court cannot "be reviewed in the normal course of an appeal after a final judgment has been entered." *Gilbert*, 458 S.W.3d at 899.

The possibility of an adverse judgment likewise does not "destroy" Appellant's interest in her position. *See State v. Johnson*, 569 S.W.2d at 816. Both the Tennessee Rules of Civil Procedure and Appellate Procedure contain avenues for Appellant to seek a stay of any trial court ruling against her pending appeal. *See* Tenn. R. Civ. P. 62.01 (providing that "in actions to remove a public officer" an interlocutory or final judgment is not stayed unless ordered by the court); Tenn. R. Civ. P. 62.03 (providing that in "actions specified in Rule 62.01" the court may in its discretion "suspend relief or grant whatever additional or modified relief is deemed appropriate during the pendency of the appeal"); Tenn. R. Civ. P. 62.04 (allowing a stay on appeal upon the giving of a bond); Tenn. R. App. P. 7 (providing the procedure for obtaining appellate review of a trial court's stay decision).

Moreover, even setting aside the issue of Appellant's ability to seek a stay, we must conclude concerns about the events that may take place following a final judgment are somewhat exaggerated. In her application, Appellant contends that "if on direct appeal, this court agrees with defendant that the trial court lacked jurisdiction, then the remedy for such a situation is unclear." In the very next sentence, however, Appellant concedes the proper remedy: "If the lawsuit is a nullity, then any ouster would be improper." Indeed, it is well-settled that a judgment entered without subject matter jurisdiction is void and of no effect.

*See, e.g.*, ***In re Baby***, 447 S.W.3d 807, 837 (Tenn. 2014) ("In consequence, if the juvenile court lacked jurisdiction as to a particular subject matter, its ruling as to that issue is a nullity."); ***In re Estate of Trigg***, 368 S.W.3d 483, 489 (Tenn. 2012) ("[T]he orders and judgments entered by courts without jurisdiction over the subject matter of a dispute are void. . . ."). *But see* ***Turner v. Turner***, 473 S.W.3d 257 (Tenn. 2015) (detailing certain exceptional circumstances, not at issue here, under which a void judgment will be given effect). Thus, while such a situation may cause disruption, there is no uncertainty as to the proper remedy should it be demonstrated that the trial court lacked subject matter jurisdiction. Moreover, it certainly does not rise to the level of other cases in which appellate review of the dispute at issue would be futile if the trial court proceedings were permitted to continue because there would be no way to "'unring the proverbial bell[.]'" ***Autin v. Goetz***, 524 S.W.3d 617, 637 (Tenn. Ct. App. 2017) (quoting ***Dispatch Printing Co. v. Recovery Ltd. P'ship***, 2006-Ohio-1347, ¶ 13, 166 Ohio App.3d 118, 123, 849 N.E.2d 297, 301) (involving "potentially damaging and confidential documents [that] were exchanged"); *see also* ***In re Lucas***, 2021 WL 2137991, at *4 (holding that a right could not be recaptured in this situation).

In our view, then, the most significant difference between interlocutory relief and an appeal of the final judgment in this case is the delay and expense that may result from a full trial. Indeed, this was one of the bases that was cited by Appellant as justifying leave to file a Rule 9 application with this Court. This was a proper basis for seeking relief under Rule 9, as the Tennessee Supreme Court has chosen to make that a consideration in determining whether to grant a Rule 9 interlocutory appeal. *See* Tenn. R. App. P. 9(a) (directing the court to consider "the need to prevent needless, expensive, and protracted litigation, giving consideration to whether the challenged order would be a basis for reversal upon entry of a final judgment, the probability of reversal, and whether an interlocutory appeal will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed" in determining whether to grant a Rule 9 application). It has chosen not to include that language in Rule 10. *See generally* Tenn. R. App. P. 10. We presume that the Tennessee Supreme Court's decision to exclude this language from Rule 10 was intentional. *See* ***State v. Welch***, 595 S.W.3d 615, 623 (Tenn. 2020) (quoting ***State v. Loden***, 920 S.W.2d 261, 265 (Tenn. Crim. App. 1995)) ("The canon of statutory construction *expressio unius est exclusio alterius* provides that 'where the legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the legislature acted purposefully in the subject included or excluded.'"); *see also* ***Thomas v. Oldfield***, 279 S.W.3d 259, 261 (Tenn. 2009) ("Although the rules of civil procedure are not statutes, the same rules of statutory construction apply in the interpretation of rules."). Thus, the threat of unnecessary or expensive litigation that is likely to be overturned on appeal is not sufficient alone to justify an extraordinary appeal under Rule 10. And we have been cautioned that we cannot interfere in the trial court's jurisdiction simply because the trial court did not grant what may have been an appropriate Rule 9 application. *See* ***Gilbert***, 458 S.W.3d at 899 ("The appellate court must respect the trial court's discretionary decision not to grant permission

to appeal under Rule 9 and refrain from granting a Rule 10 appeal.").

In sum, we cannot conclude that the stringent requirements of Rule 10 have been met in this case. As a result, we conclude that Appellant's application for an extraordinary appeal was improvidently granted. We therefore dismiss this appeal.

### III. Conclusion

This extraordinary appeal is dismissed, and the case is remanded to the trial court for further proceedings. Costs of this appeal are taxed to the Appellant Julia C. Hurley, for which execution may issue, if necessary.


s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE